Policy Number:      ELU110773-09
Renewal of Number   ELU104269-08

**Indian Harbor Insurance Company**

Members of the XL America Companies

| MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATIONS |
|---|

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

The Insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Insurance Guaranty Association.

Procuring Licensee:_____

Item 1.  Name and Mailing Address of Insured Entity:

Flagship Credit Corporation
3 Christy Drive
Suite 201
Chadds Ford, PA  19317-9683

Item 2.  **Policy Period:**  From:  April 20, 2009   To:   April 20, 2010

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

Item 3.  Limit of Liability:

$3,000,000      Aggregate each Policy Period (including Defense Expenses)

Item 4.  Retention:

$500,000       each **Claim**

Item 5.  Optional Extension Period:

Length of Optional Extension Period:

(Either one year or two years after the end of the Policy Period, at the election of the Parent Organization)

Premium for Optional Extension Period:   One Year:  $300,000.00
                                          Two Years: N/A

Item 6.  Professional Services:

See Endorsement #2

Item 7.  Pending and Prior Proceeding Date:   April 20, 2007

Item 8.  Notices required to be given to the Insurer must be addressed to:



MP 70 00 02 00                                                              Page 1 of 2

## MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATIONS

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

STATE TAX $4,500.00
STAMPING $25.00

**Item 9.** Premium:

Taxes, Surcharges or Fees: $0.00
Total Policy Premium: $150,000.00

**Item 10.** Policy Forms and Endorsements Attached at Issuance:

MP 71 00 02 00   XL-PASOP (12/08)   MP 80 15 04 01   MP 83 21 12 07   XL 80 04 04 00

Countersigned: _____ By: _____
                    Date              Authorized Representative

THESE DECLARATIONS AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE APPLICATION SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE INSURED RELATING TO THIS INSURANCE.

In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.

David B. Duclos
President

Kenneth P. Meagher
Secretary

**Indian Harbor Insurance Company**

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived. Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: Indian Harbor Insurance Company

Policy Number: ELU110773-09

_____
Signature of Insured

_____
Print Name and Title

_____
Date

## IN WITNESS ENDORSEMENT

INDIAN HARBOR INSURANCE COMPANY
ADMINISTRATIVE OFFICE: SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE: CT CORPORATION SYSTEMS
314 EAST THAYER AVENUE
BISMARCK, ND 58501-4018

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____
Dennis P Kane
President

_____
Toni Ann Perkins
Secretary

LAD 400-IHIC 12 08

# NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Endorsement No.: 1  
Named Insured: Flagship Credit Corporation  
Policy No.: ELU110773-09

Effective: April 20, 2009  
12:01 A.M. Standard Time  
Insurer: Indian Harbor Insurance Company

# SERVICE OF PROCESS ENDORSEMENT

The Commissioner of Insurance of the State of Pennsylvania is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Toni Ann Perkins  
> Secretary  
> Seaview House  
> 70 Seaview Avenue  
> Stamford, CT 06902-6040

as its agent in Pennsylvania to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

XL-PASOP (12/08)

MP 80 15 04 01

Endorsement No.: 2  
Named Insured: Flagship Credit Corporation  
Policy No.: ELU110773-09  

Effective: April 20, 2009  
12:01 A.M. Standard Time  
Insurer: Indian Harbor Insurance Company

# AMEND ITEM 6 ENDORSEMENT

In consideration of the premium charged, Item 6 of the Declarations is amended to read in its entirety as follows:

Item 6  Professional Services:

   I. the granting of any extension of credit on any terms or at any rate of interest;
   II. the termination, cancellation, acceleration, withdrawal or failure to advance funds in connection with any extension of credit
   III. the administration of any extension of credit
   IV. The foreclosure on, the taking possession of or assignment of, or the subordination of any collateral in connection with any extension of credit

All other terms, conditions and limitations of this Policy shall remain unchanged.

MP 83 21 12 07

Endorsement No.: 3  
Named Insured: Flagship Credit Corporation  
Policy No.: ELU110773-09  

Effective: April 20, 2009  
12:01 A.M. Standard Time  
Insurer: Indian Harbor Insurance Company

# DISCRIMINATION EXCLUSION ENDORSEMENT

In consideration of the premium charged, no coverage shall be available under the Policy for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged refusal to provide loans or other services to customers (a) or and properties located in certain geographic areas or neighborhoods regarded as deteriorating, undesirable or a poor investment risk by the Insured, or (b) due to discrimination of any kind including any violation of any federal, state or local law involving discrimination based on such customer's race, color, religion, age, sex, national origin, disability, pregnancy or other protected status.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 04 04 00

Endorsement No.: 4  
Named Insured: Flagship Credit Corporation  
Policy No.: ELU110773-09  

Effective: April 20, 2009  
12:01 A.M. Standard Time  
Insurer: Indian Harbor Insurance Company  

# INVERTED REPRESENTATION ENDORSEMENT

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

MISCELLANEOUS PROFESSIONAL LIABILITY
MP 71 00 02 00

# MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE COVERAGE FORM

THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Company identified in the Declarations (hereinafter the Insurer), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer and the Insureds agree as follows:

## I. INSURING AGREEMENT

The Insurer shall pay on behalf of the Insured Loss resulting from a Claim first made against the Insured during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act.

## II. DEFINITIONS

(A) "Application" means:

   (1) the application attached to and forming part of this Policy; and

   (2) any materials submitted therewith,

   which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B) "Claim" means:

   (1) any civil proceeding in a court of law or equity, or arbitration;

   (2) any criminal proceeding which is commenced by the return of an indictment;

   (3) any written notice received by an Insured that any person or entity intends to hold any Insured responsible for a Wrongful Act; or

   (4) a formal administrative regulatory proceeding or formal investigation of an Insured which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such Insured as a person or entity against whom a proceeding as described in (B)(1) or (2) above may be commenced.

(C) "Defense Expenses" means reasonable legal fees and expenses incurred in the defense of any Claim including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. Defense Expenses will not include the Insured's overhead expenses or any salaries, wages, fees, or benefits of any Insured.

(D) "Insured" means.

   (1) any natural person who was, is or shall become a director, officer, employee, partner or member of the Board of Managers of the Insured Entity, but only while such person was, is or shall be acting within the scope of his or her duties as such;

   (2) the lawful spouse of any natural person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse; and

MISCELLANEOUS PROFESSIONAL LIABILITY
MP 71 00 02 00

  (3) the Insured Entity.

In the event of the death, incapacity or bankruptcy of a natural person identified in (D)(1) or (2) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(E) "**Insured Entity**" means the entity named in ITEM 1 of the Declarations.

(F) "**Interrelated Wrongful Acts**" means **Wrongful Acts** which are based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or series of related facts, circumstances, situations, transactions or events.

(G) "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

  (1) the multiplied portion of any damage award;

  (2) fines, penalties or taxes imposed by law; or

  (3) matters which are uninsurable under the law pursuant to which this Policy is construed.

(H) "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(I) "**Professional Services**" means only those services performed for others for a fee and which are listed in ITEM 6 of the Declarations.

(J) "**Wrongful Act**" means any actual or alleged act, error, omission committed solely in the performance of, or failure to perform **Professional Services**.

## III. EXCLUSIONS

(A) The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** brought about or contributed to in fact by any:

  (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

  (2) profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled;

provided, that each **Insured** agrees that, if by a final adjudication in the underlying action or in a separate action or proceeding that the **Insurer** has no liability to an **Insured** for **Loss** as a result of a **Claim** by reason of this EXCLUSION (A), such **Insured** will repay the **Insurer** upon demand all **Defense Expenses** paid on behalf of such **Insured** in connection with such **Claim**.

(B) The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

  (1) any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof;

  (2) any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain,

        treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste;

    (3)    any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation, arbitration or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Proceeding Date set forth in ITEM 7 of the Declarations;

    (4)    any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any prior insurance policy; or

    (5)    the performance of or failure to perform **Professional Services** for:

        (a)    the **Insured**; or

        (b)    any entity owned or controlled by any person or entity included within the definition of **Insured**; or

        (c)    any entity which is under common ownership or control with any entity included within the definition of **Insured**; or

        (d)    any person or entity which owns or controls any entity included within the definition of **Insured**; or

        (e)    any entity of which any person included within the definition of **Insured** is a director, officer, partner, principal shareholder or member of the Board of Managers.

(C)    The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

    (1)    by, on behalf of any person or entity included within the definition of **Insured** against any other person or entity included within the definition of **Insured**; or

    (2)    for non-pecuniary relief.

## IV. LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3 of the Declarations.

(B)    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

## V. DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)    It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)    No **Insured** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)    Upon the written request of the **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the **Insured** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)    If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and uncovered matters, or because a **Claim** is made against

MISCELLANEOUS PROFESSIONAL LIABILITY
MP 71 00 02 00

both the **Insured** and persons or entities not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of **Loss** that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the **Insured** and others.

(E) In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI. GENERAL CONDITIONS

### (A) NOTICE

(1) As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2) If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured**:

  (a) provides the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the **Insured** first became aware of such **Wrongful Act**; and

  (b) requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

  then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

(3) All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 6 of the Declarations; Attention: Claim Department.

### (B) INTERRELATED CLAIMS

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

### (C) OTHER INSURANCE

All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

### (D) CANCELLATION AND RENEWAL OF COVERAGE

(1) Except for the nonpayment of premium, as set forth in (D)(2) below, the **Insured** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

MISCELLANEOUS PROFESSIONAL LIABILITY
MP 71 00 02 00

(2) The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than ten (10) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Insured** and the agent of record for the **Insured**, if applicable.

(3) The Insurer is under no obligation to renew this Policy upon its expiration. If the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Insured** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(E) **OPTIONAL EXTENSION PERIOD**

(1) If either the **Insured** or the Insurer does not renew this Policy, the **Insured** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2) As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Insured** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Insured** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3) If the **Insured** elects to purchase the Optional Extension Period as set forth in (E)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4) The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(F) **ASSISTANCE, COOPERATION AND SUBROGATION**

(1) The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

2) In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The **Insured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G) **EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of Loss, the premium as set forth in ITEM 9 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(H) **REPRESENTATION CLAUSE**
The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except

MISCELLANEOUS PROFESSIONAL LIABILITY
MP 71 00 02 00

for material facts or information known to the person(s) who signed the **Application**. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(I) ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY

    (1) No action may be taken against the **Insurer** unless, as a condition precedent thereto:

        (a) there has been full compliance with all of the terms and conditions of this Policy; and

        (b) the amount of the obligation of the **Insured** has been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the **Insurer**.

    (2) Nothing contained herein shall give any person or entity any right to join the **Insurer** as a party to any **Claim** against the **Insurer** to determine their liability, nor may the **Insured** implead the **Insurer** in any **Claim**.

    (3) Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

    (4) Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Insurer** will not cause a waiver or change in any part of this Policy or prevent the **Insurer** from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

(J) AUTHORIZATION AND NOTICES

It is understood and agreed that the person or entity stated in ITEM 1 of the Declarations will act with respect to:

    (1) the payment of the premiums;

    (2) the receiving of any return premiums that may become due under this Policy;

    (3) the giving of all notices to the **Insurer** as provided herein; and

    (4) the receiving of all notices from the **Insurer**.

(K) ENTIRE AGREEMENT

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the **Insurer** or any of its agents and the **Insured** relating to this insurance.