**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **FLAGSHIP CREDIT CORPORATION** | § | |
| **Plaintiff / Counterclaim Defendant** | § | |
| | § | |
| **v.** | § | **NO.  4:10-cv-3616** |
| | § | |
| **INDIAN HARBOR** | § | |
| **INSURANCE COMPANY** | § | |
| **Defendant / Counterclaim Plaintiff.** | § | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF INDIAN HARBOR INSURANCE
COMPANY'S OPPOSITION TO FLAGSHIP'S MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDING..............................................1

II.    ISSUES AND STANDARD OF REVIEW ......................................................1

III.   UNDISPUTED FACTS ..............................................................................2

    A.    Response to Flagship's Statement of Undisputed Facts ......................2

    B.    Additional Undisputed Facts..............................................................3

        1.    Policy Formation.....................................................................3

        2.    The Insurance Policy—Provisions..........................................4

        3.    The Underlying Action ............................................................4

IV.   SUMMARY OF THE ARGUMENT .............................................................6

V.    ARGUMENT ...........................................................................................7

    A.    Pennsylvania Law Governs and Is Materially Different From Texas Law on the Dispositive Issues.........................................................7

        1.    Pennsylvania Law Applies to Interpretation of the Policy ......7

        2.    Pennsylvania Law Materially Differs From Texas Law Regarding Interpretation  of the Policy ..................................8

    B.    The Policy Does Not Provide Indemnification Coverage for the Hartt Action............................................................................................8

        1.    The Hartt Action Seeks Non-Covered Penalty Damages .........9

            a.    The Policy's "Penalty" Provision Is Enforceable Under Pennsylvania Law and Precludes Coverage of Punitive Amounts.........................................................9

            b.    The Hartt Action Seeks Amounts That Penalize, Not Compensate.................................................................11

            c.    Flagship's Preferred Construction of "Penalty" Is Unreasonable.............................................................14

        2.    The Hartt Action Seeks Amounts Not Insurable Under Pennsylvania Law ...............................................................20

        3.    The Policy is Not Ambiguous.................................................23

    C.    Flagship's Breach of Contract Claim Is Meritless...............................24

VI.   CONCLUSION........................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Canal Insurance Co. v. Underwriters at Lloyd's London*,
  435 F.3d 431 (3d Cir. 2006)............................................................................9

*Carey v. Employers Mutual Casualty Co.*,
  189 F.3d 414 (3d Cir. 1999) ................................................................... *passim*

*CleanCOALition v. TXU Power*,
  536 F.3d 469 (5th Cir. 2008) ........................................................................4

*First Liberty Investment Group v. Nicholsberg*,
  145 F.3d 647 (3d Cir. 1998)........................................................................17

*Hartt v. Flagship Credit Corp.*,
  No. 10-822, 2010 WL 2736959 (E.D. Pa. July 8, 2010) ...............................5

*Hayfield v. Home Depot U.S.A., Inc.*,
  168 F. Supp. 2d 436 (E.D. Pa. 2001) ..........................................................14

*Hicks v. Feiock*,
  485 U.S. 624 (1988)....................................................................................16

*Koresko v. Chase Manhattan Finance Services (In re Koresko)*,
  91 B.R. 689 (Bankr. E.D. Pa. 1988) ......................................................18, 22

*Law v. National Collegiate Athletic Association*,
  134 F.3d 1438 (10th Cir. 1998) ..................................................................16

*Nance v. Thompson Medical Co.*,
  173 F.R.D. 178 (E.D. Tex. 1997)...................................................................5

*Northwood Nursing & Convalescent Home, Inc. v. Continental Insurance Co.*,
  161 F.R.D. 293 (E.D. Pa. 1995).....................................................................5

*Pennzoil-Quaker State Co. v. America International Specialty
  Lines Insurance Co.*,
  653 F. Supp. 2d 690 (S.D. Tex. 2009) ...........................................................7

*In re Schwalb*,
  347 B.R. 726 (Bankr. D. Nev. 2006) ...........................................................18

*St. Paul Mercury Insurance Co. v. Lexington Insurance Co.*,
    78 F.3d 202 (5th Cir. 1996) ..................................................................7, 8

*Tennis v. v. Ford Motor Co.*,
    No. 2:10-cv-00563, 2010 WL 2978073 (W.D. Pa. July 29, 2010) ...........................14

*The Limited, Inc. v. Cigna Insurance Co.*,
    228 F. Supp. 2d 574 (E.D. Pa. 2001),
    *aff'd*, 29 F. App'x 88 (3d Cir. 2002) .......................................................8, 9

*United States. v. United Mine Workers of America*,
    330 U.S. 258 (1947) ............................................................................16

*United States v. Wolf*,
    90 F.3d 191 (7th Cir. 1996) ..................................................................16

*Whole Enchilada, Inc. v. Travelers Property Casualty Co.*,
    581 F. Supp. 2d 677 (W.D. Pa. 2008) ........................................9, 21, 22, 23

**STATE CASES**

*401 Fourth St., Inc. v. Investors Insurance Group*,
    879 A.2d 166 (Pa. 2005) ......................................................................10

*ACE American Insurance Co. v. Underwriters at Lloyds & Cos.*,
    939 A.2d 935 (Pa. Super. Ct. 2007),
    *aff'd mem.*, 971 A.2d 1121 (Pa. 2009) .....................................................8, 9

*Aetna Casualty & Surety Co. v. Roe*,
    650 A.2d 94 (Pa. Super. Ct. 1994) ...........................................................21

*All Valley Acceptance Co. v. Durfey*,
    800 S.W.2d 672 (Tex. Ct. App. 1990) ........................................................18

*BLaST Intermediate Unit 17 v. CNA Insurance Cos.*,
    674 A.2d 687 (Pa. 1996) ......................................................................23

*Bank One, Texas, N.A. v. Stewart*,
    967 S.W.2d 419 (Tex. Ct. App. 1998) ........................................................18

*Bundrick v. First National Bank of Jacksonville*,
    570 S.W.2d 12 (Tex. Ct. App. 1978) .........................................................18

*Butterfield v. Giuntoli*,
    670 A.2d 646 (Pa. Super. Ct. 1995) ..........................................................21

*Carroll v. Kennon*,
    734 S.W.2d 34 (Tex. Ct. App. 1987) ........................................................................18

*Collins & Aikman Corp. v. Hartford Accident & Indemnity Co.*,
    436 S.E.2d 243 (N.C. 1993).......................................................................................13

*Creed v. Allstate Insurance Co.*,
    529 A.2d 10 (Pa. Super. Ct. 1987)............................................................................21

*Davenport v. Chrysler Credit Corp.*,
    818 S.W.2d 23 (Tenn. Ct. App. 1991) ......................................................................19

*Dixon v. Home Indemnity Co.*,
    426 S.E.2d 381 (Ga. Ct. App. 1992) .........................................................................12

*Erdmann v. Rants*,
    442 N.W.2d 441 (N.D. 1989) ....................................................................................18

*First City Bank-Farmers Branch, Texas v. Guex*,
    677 S.W.2d 25 (Tex. 1984).................................................................................17, 19

*Garza v. Brazos County Federal Credit Union*,
    603 S.W.2d 298 (Tex. Ct. App. 1980) ......................................................................18

*Graziani v. OneBeacon Ins. Inc.*,
    2 Pa. D. & C.5th 242 (C. P. 2007) ..............................................................................5

*Hensley v. Lubbock National Bank*,
    561 S.W.2d 885 (Tex. Ct. App. 1978) ......................................................................18

*Indian Rocks Property Owners Association, Inc. v. Glatfelter*,
    950 A.2d 1093 (Pa. Commw. Ct. 2008) ....................................................................15

*Jacobs v. Healey Ford-Subaru, Inc.*,
    652 A.2d 496 (Conn. 1995) .......................................................................................18

*Jordan v. Workers' Compensation Appeal Board
    (Philadelphia Newspapers, Inc.)*,
    921 A.2d 27 (Pa. Commw. Ct. 2007) ........................................................................15

*Kruse v. Voyager Insurance Cos.*,
    648 N.E.2d 814 (Ohio 1995) .....................................................................................18

*Kuhnke v. Fisher*,
    740 P.2d 625 (Mont. 1987) .......................................................................................12

*Madison Construction Co. v. Harleysville Mutual Insurance Co.*,
735 A.2d 100 (Pa. 1999) ...................................................................................13, 23

*Pennington v. Singleton*,
606 S.W.2d 682 (Tex. 1980) ...........................................................................16

*Progressive Express Insurance Co. v. Scoma*,
975 So. 2d 461 (Fla. Dist. Ct. App. 2007) ......................................................5

*Queen City Farms, Inc. v. Central National Insuranc*e,
882 P.2d 703 (Wash. 1994)..............................................................................11

*Reddy Ice Corp. v. Travelers Lloyds Insurance Co.*,
145 S.W.3d 337 (Tex. Ct. App. 2004) ............................................................7

*Ryan Homes, Inc. v. Home Indemnity Co.*,
647 A.2d 939 (Pa. Super. Ct. 1994) ................................................................23

*Sprague v. Walter*,
656 A.2d 890 (Pa. Super. Ct. 1995) ................................................................14

*State v. Izzolena*,
609 N.W.2d 541 (Iowa 2000) ..........................................................................16

*State v. Kuykendall*,
136 P.3d 983 (Mont. 2006) ..............................................................................16

*Tracy v. Tracy*,
105 A.2d 122 (Pa. 1954) ..................................................................................5

*Wellcome v. Home Insurance Co.*,
849 P.2d 190 (Mont. 1993) ..............................................................................12

## FEDERAL STATUTES, RULES AND REGULATIONS

29 U.S.C. § 206(d)(1) .............................................................................................23

29 U.S.C. § 216(b) ..................................................................................................23

14 C.F.R. § 253.7 ....................................................................................................15

Fed. R. Evid. 201(b)................................................................................................4

Fed. R. Evid. 501 ....................................................................................................5

**STATE STATUTES**

40 Pa. Cons. Stat. § 4003(a)(2)(viii) .................................................................................14

62 Pa. Cons. Stat. § 3935(a) .............................................................................................15

Tex. Bus. & Com. Code Ann. § 9.625(b) ....................................................................11, 20

Tex. Bus. & Com. Code Ann. § 9.625(c)(1) .................................................................11 20

Tex. Bus. & Com. Code Ann. § 9.625(c)(2) ...........................................................11, 19, 20

Tex. Bus. & Com. Code Ann. § 9.625 cmt. 4 ..............................................................12, 20

Tex. Bus. & Com. Code Ann. § 601.053 ..........................................................................17

Tex. Fin. Code Ann. § 302.102 ........................................................................................17

Tex. Fin. Code Ann. § 302.302 ........................................................................................17

Tex. Gov't Code Ann. § 609.012 ......................................................................................17

**MISCELLANEOUS**

BLACK'S LAW DICTIONARY, 1247 (9th ed. 2009) .........................................................15

Indian Harbor Insurance Company ("Indian Harbor") opposes the motion for summary judgment filed by Flagship Credit Corporation ("Flagship") and cross-moves for summary judgment on Indian Harbor's counterclaim and on Flagship's claim for declaratory relief and for breach of contract.

## I.    NATURE AND STAGE OF THE PROCEEDING

This is a declaratory judgment insurance coverage case.  Flagship seeks a declaratory judgment that it is entitled to indemnity coverage for an underlying lawsuit (the "Hartt Action") under Indian Harbor Miscellaneous Professional Liability Insurance Policy No. ELU110773-09 (the "Policy").  Flagship brings an additional cause of action for breach of contract regarding the same dispute.  Indian Harbor has counterclaimed for a declaration that the Policy provides no indemnity coverage for the underlying suit.

As Flagship has acknowledged in its motion for summary judgment, the coverage issues turn on undisputed facts, so this case is ripe for summary judgment without discovery.  If the Court grants Indian Harbor's motion, both of Flagship's causes of action necessarily will fail.  If the Court were to rule that the Policy provides indemnity coverage for the underlying suit, discovery might be necessary on damages for Flagship's breach of contract claim; otherwise, the Court can resolve all issues without the necessity of additional proceedings.

## II.    ISSUES AND STANDARD OF REVIEW

Indian Harbor is entitled to summary judgment on the grounds that Flagship has failed to establish that the amounts for which it seeks coverage fall within the Policy's insuring agreement, which does not include coverage for penalties imposed by law or for amounts that are uninsurable under Pennsylvania law.  Because the amounts are punitive rather than compensatory in nature, they constitute penalties under Pennsylvania law.  Moreover, because the amounts are punitive in nature and not imposed vicariously on Flagship for the acts of its

agent, they are uninsurable under Pennsylvania law.  For either or both of these reasons, Indian Harbor is entitled to summary judgment.  Flagship accurately states that the standard of Federal Rule of Civil Procedure 56(c)(2) applies to motions for summary judgment.

## III.   UNDISPUTED FACTS

### A.   Response to Flagship's Statement of Undisputed Facts

While Indian Harbor does not agree with all of the characterizations and argumentative statements in Flagship's statement of undisputed facts, the parties agree that the Court may rule as a matter of law based on undisputed documents.  Accordingly, Indian Harbor does not dispute the statements in paragraphs 3, 4, 8, 9, and 16-18 of Flagship's statement of facts.  With respect to paragraphs 1 and 2, the document attached as Exhibit A to Flagship's motion is not a full and complete copy of the Policy, but Flagship has admitted that the copy of the Policy attached to Indian Harbor's counterclaim is a full and complete copy.  Accordingly, Indian Harbor attaches that copy of the Policy, which includes the Application, as Exhibit A hereto.  Indian Harbor acknowledges that Flagship's statement partially characterizes the Policy, but refers the Court to Exhibit A for the Policy's full terms and conditions.

Indian Harbor does not contest the authenticity of Flagship's Exhibits B, C, D, E, F, G, H, I, J, K, L, or M.  Accordingly, Indian Harbor admits that the documents described in paragraphs 5-7, 10-15 and 19-22 are authentic, denies that the allegations fully or accurately characterize the documents, and refers the Court to the actual documents, which speak for themselves.  With respect to paragraph 23, Indian Harbor denies that Flagship fully complied with the terms and conditions of the Policy because Flagship breached Section VI(I)(1) of the Policy in bringing this lawsuit, and has not necessarily cooperated with Indian Harbor in other ways.  However, these issues are not material to determination of these cross-motions, so Indian Harbor does not dispute the allegations of paragraph 23 for purposes of these cross-motions only.

B.    **Additional Undisputed Facts**

1.    Policy Formation

*24*.[1]  Indian Harbor issued the Policy to Flagship as a renewal of a previous policy.

Policy, Decl.  Flagship applied for the renewal Policy by submitting a signed Application dated

March 20, 2009.  Policy, Application at 5.[2]  On the Application, Flagship listed its "Principal

Address" as "3 Christy Drive, Chadds Ford, PA  19317."  Policy, Application, Item 1.

Flagship's answers on the Application make no reference to any other state.  Policy, Application.

*25*.  Indian Harbor issued a Quote to Flagship on or about April 15, 2009.[3]  The Quote

lists Flagship's Pennsylvania address.  Ex. Q.

*26*.  On April 15, 2009, Flagship's broker emailed Indian Harbor requesting that Indian

Harbor bind coverage per the terms of the Quote.[4]  In response, Indian Harbor issued a binder to

Flagship on April 15, 2009.[5]  The binder lists Flagship's Pennsylvania address.  Ex. S.

*27*.  Indian Harbor issued a complete copy of the Policy about one month after binding

coverage.[6]  The Policy contains Pennsylvania-specific provisions.  Policy, Decl.; Endorsement 1.

*28*.  The Policy negotiation process involved communications between Indian Harbor in

Connecticut, Flagship's broker in California, and Flagship in Pennsylvania.  *See* Exs. Q-T.  The

documents reveal no evidence of any contacts with Texas in the formation of the Policy.  *See id.*

---

[1] For the convenience of the Court, Indian Harbor labels additional undisputed facts and additional exhibits in sequence with Flagship's labels, which ended at paragraph 23 and Exhibit P.

[2] Because the Application is attached to and forms a part of the Policy, Policy, § II(A)(1), it appears at the end of Exhibit A.

[3] A copy of the Quote is attached hereto as Exhibit Q.  Note that while the Quote erroneously bears the date April 15, 2008, the Quote is for the Policy Period April 20, 2009 to April 20, 2010, and facially states that it expires in 30 days.  In any event, Flagship has admitted that "Indian Harbor provided a quotation for Flagship that listed Flagship's Pennsylvania address."  Indian Harbor's Counterclaim ¶ 9; Flagship's Answer ¶ 9.

[4] A copy of this email is attached hereto as Exhibit R.

[5] A copy of the binder is attached hereto as Exhibit S.

[6] *See* Letter from Chris Baldwin to Alex Slawson (May 19, 2009), attached hereto as Exhibit T.

2.      The Insurance Policy—Provisions

*29.*  Subject to all of its terms, conditions, and exclusions, the Policy provides

miscellaneous professional liability coverage to Flagship with a Limit of Liability of $3 million,

subject to a $500,000 retention.  Policy, Decl., Items 3-4.  The Policy's Insuring Agreement

provides that Indian Harbor "shall pay on behalf of the Insured Loss resulting from a Claim first

made against the Insured during the Policy Period or, if applicable, the Optional Extension

Period, for a Wrongful Act."[7]  *Id.* § I.

*30.*  Section II(G) of the Policy defines Loss as follows:

"Loss" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay.  Loss will not include:

(1)      the multiplied portion of any damage award;

(2)      fines, penalties or taxes imposed by law; or

(3)      matters which are uninsurable under the law pursuant to which this Policy is construed.

3.      The Underlying Action

*31.*  In general terms, the Hartt Action involves purported technical violations by

Flagship of legal requirements for certain notices to delinquent auto-loan borrowers.

*32.*  On April 21, 2010, Hartt filed a Memorandum of Law (the "Memorandum") with the

Hartt Action court.[8]  In the Memorandum, Hartt states:  "Flagship appears to imply that Hartt is

---

[7] The Policy defines several capitalized terms.  *See* Policy, § II.  Unless context otherwise requires, capitalized terms in this brief refer to terms as defined by the Policy.

[8] As the Memorandum is a publicly filed court document, its existence and contents are subject to judicial notice. FED. R. EVID. 201(b); *see also CleanCOALition v. TXU Power*, 536 F.3d 469, 471 n.2 (5th Cir. 2008) (noting that the existence of filings in separate court was a proper subject of judicial notice under the Rule).  A copy of the Memorandum is attached hereto as Exhibit U.  In any event, Flagship has admitted that the Memorandum contains the statements quoted in this brief.  Indian Harbor's Counterclaim ¶¶ 21-22; Flagship's Answer ¶¶ 21-22.

seeking both actual damages and statutory damages, a form of double relief which is prohibited by *Guex*,677 [sic] S.W.2d at 30.  A review of Hartt's Amended Complaint in this Court, however, indicates that Hartt is seeking only statutory damages on behalf of himself and the putative class."  Ex. U at 8.  Hartt further states: "To the extent that any member of a certified class has actual damages in excess of the statutory minimum formula, that person will therefore be entitled to opt-out and pursue that relief in an individual case."  *Id.* at 8-9.

*33*.  On July 7, 2010, the Court in the Hartt Action entered a memorandum opinion,[9] which stated: "Hartt concedes that the class will only seek recovery of the statutory minimum.  Class members with actual damages exceeding the minimum statutory uniform damages will be afforded an opportunity to opt out of the class to pursue their own claims."  Ex. M at 7.

*34*.  On April 1, 2010, Flagship's counsel sent a letter to Indian Harbor regarding the Hartt Action.[10]  In that letter, Flagship repeatedly characterized the relief sought in the Hartt action as a "statutory penalty" and a "penalty."  Ex. V.

---

[9] Flagship's Motion for Summary Judgment attaches this opinion as its Exhibit M.  The opinion is also available as *Hartt v. Flagship Credit Corp.*, No. 10-822, 2010 WL 2736959 (E.D. Pa. July 8, 2010).

[10] A sealed copy of this letter is attached hereto as Exhibit V.  Several months before Indian Harbor disclaimed indemnity coverage for the Hartt Action, Flagship's counsel sent the April 1 letter from its office in Pennsylvania to Indian Harbor.  *See Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 181 (E.D. Tex. 1997) (citing FED. R. EVID. 501) ("Claims of attorney-client privilege are governed by the law of the state where the communication was made.").  The letter facially states that it contains privileged and confidential attorney work product.  Because of its contents, the letter is privileged against disclosure to the underlying plaintiffs.  *See, e.g.*, *Tracy v. Tracy*, 105 A.2d 122, 125 (Pa. 1954); *see also Progressive Express. Ins. Co. v. Scoma*, 975 So.2d 461, 467 (Fla. Dist. Ct. App. 2007) ("[T]he confidential communications between the insured, the insurer, and any counsel representing them regarding the matter of common interest are protected by the attorney-client privilege from discovery by third parties.").  However, the letter, not "confidential" as to Indian Harbor in the first place, is not privileged as against Indian Harbor and is admissible under seal in this coverage action.  *See Tracy*, 105 A.2d at 125 (noting in common interest case that "no communications in relation to the common business are privileged in favor or against either [party], but only against a common adversary"); *Northwood Nursing & Convalescent Home, Inc. v. Cont'l Ins. Co.*, 161 F.R.D. 293, 297 (E.D. Pa. 1995) (holding that policyholder had "no reasonable expectation of privilege" in not-yet-disclosed documents relating to underlying action because of common interest and privity between policyholder and insurer that agreed to defend underlying action); *see also Graziani v. OneBeacon Ins. Inc.*, 2 Pa. D. & C.5th 242, 247 (C.P. 2007) (holding, when insurer defends policyholder, that "the insured and the insurance company are both clients of the attorney until such time as a conflict arises").

*35.* Neither Flagship nor Hartt filed with the Hartt Action court any evidence regarding actual injury suffered by class members as a result of Flagship's alleged violations of law.  Nor has Flagship provided any such evidence to Indian Harbor.

## IV.   SUMMARY OF THE ARGUMENT

After Flagship tendered the Hartt Action under its Pennsylvania insurance policy, Indian Harbor agreed to reimburse Defense Expenses.  As the Hartt Action progressed, it became clear that the plaintiff did not seek to prove and recover any actual damages that any class member suffered from Flagship's purported violations of the law.  Instead, Hartt sought to recover only statutory damages for Flagship's alleged technical violations of the law, calculated by statute without reference to any actual damages any class member incurred.

Under the Policy's unambiguous language, "penalties . . . imposed by law" are not covered Loss.  Under Pennsylvania law, an amount that punishes for violation of a law without reimbursing a plaintiff for actual harm suffered is a "penalty."  *See Carey v. Emp'rs Mut. Cas. Co.*, 189 F.3d 414, 419 (3d Cir. 1999) (applying Pennsylvania law).  The Hartt Action seeks such amounts.  In addition, Pennsylvania public policy prohibits indemnification of such amounts, separately removing the relief sought by the Hartt Action from the definition of covered Loss.

Accordingly, the Court should enter judgment in favor of Indian Harbor on Indian Harbor's Counterclaim, and against Flagship on Flagship's claim for declaratory relief.  Such a judgment would necessarily bar Flagship's purported claim for breach of contract, but in any event the Court should enter summary judgment in favor of Indian Harbor on that claim because undisputed facts show that Indian Harbor has not breached its Policy obligations.

## V.   ARGUMENT

### A.   Pennsylvania Law Governs and Is Materially Different From Texas Law on the Dispositive Issues

#### 1.   Pennsylvania Law Applies to Interpretation of the Policy

There can be no legitimate question that Pennsylvania law applies to this Court's interpretation of the Policy.  "A federal court must follow the choice-of-law rules of the state in which it sits." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996). Texas courts analyzing liability insurance policies that provide nationwide coverage look to "the place of contracting, the place of negotiation, and the domicile, residence, nationality, place of incorporation, and place of business of the parties" as "the primary factors to determine which law applies." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 346 (Tex. App. 2004); *see also Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines Ins. Co.*, 653 F. Supp. 2d 690, 703 (S.D. Tex. 2009) (same).

These factors overwhelmingly point to Pennsylvania law.  Indian Harbor issued the Policy to Flagship, a Delaware corporation with its principal place of business in Pennsylvania. *See* Flagship Compl., ¶¶ 3-4.  Flagship applied for the Policy by listing its Pennsylvania address. Policy, Application, Item 1.  Indian Harbor provided a quotation to Flagship that listed Flagship's Pennsylvania address.  Ex. Q.  Indian Harbor bound coverage by issuing a binder that listed Flagship's Pennsylvania address.  Ex. S.  And Indian Harbor not only issued the Policy with Flagship's Pennsylvania address, Policy, Declarations, Item 1, it included Pennsylvania-specific language in the Policy itself, Policy, Declarations; Endorsement 1.  Nothing in the negotiation or issuance of the Policy indicates that the parties intended any law other than that of Pennsylvania to apply to the Policy.  Exs. Q-T.  There also is nothing in the negotiation or issuance of the Policy that touches upon Texas.

That the Hartt Action brings a claim under Texas law is irrelevant to the choice-of-law analysis.  "[W]hen the issues of a case require the construction and application of insurance policies . . . the relevant inquiry is what contacts the state has with the insurance dispute, and not with an underlying lawsuit."  *St. Paul*, 78 F.3d at 205 (applying Texas choice-of-law analysis). Texas has no relevant contacts with the Policy that Indian Harbor issued to a Pennsylvania insured.  Indeed, in Flagship's summary judgment motion, Flagship makes no argument that Texas law would apply to the Policy to the extent that Texas law differs from Pennsylvania law.

2.  <u>Pennsylvania Law Materially Differs From Texas Law Regarding Interpretation of the Policy.</u>

As explained in greater detail below, Pennsylvania and Texas law materially differ regarding two issues of relevance to interpretation of the Policy.  First, Pennsylvania has directly applicable precedent governing interpretation of insurability-of-penalties provisions in insurance policies, but Texas does not.  In addition, Pennsylvania public policy is less permissive of the insurability of punitive damages than is that of Texas.

**B.   <u>The Policy Does Not Provide Indemnification Coverage for the Hartt Action</u>**

Because the applicable Policy provisions are part of the Policy's coverage grant, Flagship bears the burden of proving that the indemnification it seeks is within the grant of coverage of the insurance policy, *i.e.*, that it is not seeking coverage for amounts that constitute penalties or that are uninsurable under Pennsylvania law.  *ACE Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935, 939-40 (Pa. Super. Ct. 2007), *aff'd mem.*, 971 A.2d 1121 (Pa. 2009); *The Limited, Inc. v. Cigna Ins. Co.*, 228 F. Supp. 2d 574, 578 (E.D. Pa. 2001), *aff'd*, 29 F. App'x 88 (3d Cir. 2002).  Flagship fails to meet its burden on both points.

1.     The Hartt Action Seeks Non-Covered Penalty Damages

Indemnification coverage is unavailable for the Hartt Action because the Hartt Action

seeks to recover penalties, for which the Policy does not provide coverage.  While Indian Harbor

has reimbursed Defense Expenses in connection with the Hartt Action, the Policy does not

require Indian Harbor to indemnify Flagship for the relief sought therein.

a.     The Policy's "Penalty" Provision Is Enforceable Under Pennsylvania Law
and Precludes Coverage of Punitive Amounts

Pursuant to its unambiguous terms, the Policy provides no coverage for "fines, penalties

or taxes imposed by law."  Policy, § II(G)(2).  The Policy does not define "penalties."  Hence,

the word must be construed in its "natural, plain and ordinary sense."  *See Whole Enchilada, Inc.*

*v. Travelers Prop. Cas. Co.*, 581 F. Supp. 2d 677, 697 (W.D. Pa. 2008) (quotation omitted)

(applying Pennsylvania law to construction of term undefined by insurance policy).

Under Pennsylvania law, "penalties" in this context means amounts that are punitive in

nature rather than compensation for actual loss.  *See Carey v. Emp'rs Mut. Cas. Co.*, 189 F.3d

414, 419-20 (3d Cir. 1999) (applying Pennsylvania law).[11]  The *Carey* court analyzed whether an

insurance policy that excluded "fines or penalties imposed by law" but did not otherwise define

"penalties" allowed an insurer to disclaim coverage for underlying damages awarded pursuant to

a certain Pennsylvania statute.  *Id.* at 416.[12]  The court noted that "[t]here are not many cases

---

[11] By contrast, no insurance cases appear to exist that analyze under Texas law policy provisions that preclude
coverage for penalties.

[12] It is worth noting that while *Carey* considered a policy *exclusion* for penalties, by contrast under the Policy any
penalties Flagship incurs never come within the Policy's insuring agreement in the first place because penalties are
not Loss for which the Policy contemplates coverage.  This distinction matters because Flagship has the burden to
prove entitlement to coverage, whereas if Indian Harbor were relying on an exclusion to disclaim coverage, Indian
Harbor would have to prove that the exclusion applies.  *Compare ACE Am.*, 939 A.2d at 939-40 (policyholder has
burden of proof that the indemnification it seeks is within the policy coverage grant) and *The Limited, Inc.*, 228 F.
Supp. 2d at 578 (same) *with Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006)
(noting that under Pennsylvania law the insurer has the burden of proof that an exclusion applies).

dealing with the scope of a fines and penalties clause in an insurance contract." *Id.* at 417.  After

canvassing available authority from other jurisdictions, the court concluded that under

Pennsylvania law "an exclusion for fines and penalties, where those terms are undefined in the

policy, allows an insurer to deny coverage when the item to be covered is punitive, rather than

merely compensatory." *Id.* at 419.  The *Carey* court ultimately held that the policy penalty

provision at issue in that case did not apply to the underlying suit because recovery under the

statute at issue was "compensatory" and "remedial" rather than "punitive." *Id.* at 420.

Under *Carey*, the proper analysis of whether the Policy provides indemnity coverage

turns on whether the Hartt Action seeks amounts imposed by law that are compensatory or

punitive in nature.  To the extent the Hartt Action seeks compensation for class members for

harm that Flagship actually caused them, the penalty provision is inapplicable.  If, however, the

Hartt Action seeks amounts imposed by law that would punish Flagship for misconduct without

reference to actual harm suffered by the class members, then such amounts constitute penalties

that do not fall within the Policy's coverage grant.

Flagship argues at length with respect to whether the Hartt Action seeks "damages,

judgments, settlements or other amounts." *E.g.*, Flagship Motion 11-13.  All such argument is

beside the point, because the Policy defines Loss to include such amounts only insofar as they

are not "fines, penalties or taxes imposed by law" or uninsurable matters.  Policy, § II(G)(2), (3).

The thrust of Flagship's argument is to minimize or read out parts of the definition of Loss, but

ignoring the effect of all of the words in the definition of Loss is impermissible.  A court "do[es]

not analyze insurance contract terms in isolation to ascertain the intent of the parties, but rather,

must take into account the entire contractual provision at issue." *401 Fourth St., Inc. v. Investors

Ins. Group*, 879 A.2d 166, 172 (Pa. 2005).  Accordingly, the Court must analyze the entire

definition of Loss, including those provisions that provide that amounts that otherwise might constitute Loss are not Loss if such amounts are penalties or are uninsurable.

Flagship also inaccurately describes this part of the definition of Loss as an "exclusion" for fines, penalties or taxes imposed by law.  *E.g.*, Flagship Motion 13.  This characterization "betrays a fundamental misunderstanding of the logic and organization of an insurance policy." *See Queen City Farms, Inc. v. Cent. Nat'l Ins.*, 882 P.2d 703, 715 (Wash. 1994) (quotation omitted).  Exclusions in the Policy, clearly labeled, exclude from coverage amounts that are Loss that meet conditions specified in each exclusion.  *See* Policy § III.  Fines, penalties or taxes imposed by law never were Loss within the Policy's coverage grant, and so cannot be "excluded" from coverage by the definition of Loss.  Flagship's characterization is akin to arguing that a claims-made policy contains an "exclusion" for claims made outside the policy period, rather than merely providing coverage only for claims made during the policy period.

> b.    The Hartt Action Seeks Amounts That Penalize, Not Compensate

The Hartt Action seeks only amounts that penalize, and does not seek amounts that compensate for actual harm suffered.  The Hartt Action seeks relief only under Tex. Bus. & Com. Code Ann. § 9.625(c)(2).  Section 9.625(c)(2) provides:

> if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price.

The statutory language allows recovery for noncompliance with the statutory notice requirements "in any event" according to the formula.  In other words, even when a borrower suffers no actual harm by a lender's violation.  In contrast, other subsections of the statute not dealing with consumer goods allow recovery based on the actual loss caused by violation of the notice requirements.  *See* § 9.625(b), (c)(1).

The Comments to the section explain that subsection (c)(2) "is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, **regardless of any injury that may have resulted**." § 9.625 cmt. 4 (emphasis added). Accordingly, recovery under the statute may be decoupled from actual injury.

The Hartt Action plaintiff and court have made clear that the Hartt Action does not involve any attempt to prove actual damages suffered by any class member.  Ex. U at 8-9, Ex. M at 7.  Rather, each member of the class would receive only statutory damages, unrelated to any actual harm the class member may have suffered from Flagship's alleged noncompliance with the requirements of the Texas Uniform Commercial Code.  In addition, Flagship itself in communication with Indian Harbor repeatedly characterized the damages the Hartt Action plaintiff seeks as a "statutory penalty."  Ex. V.  Accordingly, the Hartt Action seeks penalties that are not covered by the Policy.

Instead of attempting to meet its burden of proof under *Carey*, which it cannot do, Flagship argues that the Court should ignore *Carey*'s statement of Pennsylvania law.  First, Flagship suggests that the *Carey* court did not intend its holding to apply to penalties paid to private litigants rather than a government.  Flagship Motion 18-19.  But nothing in *Carey* suggests that the *Carey* court intended to limit its holding in this fashion.  To the contrary, three of the five cases that *Carey* analyzed in formulating its punitive-or-remedial test considered whether insurance policies provided coverage for amounts paid to private litigants.  *See Carey*, 189 F.3d at 418 (considering *Wellcome*, *Dixon*, and *Collins*); *Wellcome v. Home Ins. Co.*, 849 P.2d 190, 193 (Mont. 1993) and underlying case *Kuhnke v. Fisher*, 740 P.2d 625, 629 (Mont. 1987) (uninsured fine at issue payable to underlying plaintiff); *Dixon v. Home Indem. Co.*, 426 S.E.2d 381, 381-82 (Ga. Ct. App. 1992) (uninsured sanctions at issue payable to underlying

defendant); *Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 436 S.E.2d 243, 246 (N.C. 1993) (insured punitive damages at issue payable to underlying plaintiff).  It makes no sense to argue that the *Carey* court did not consider amounts payable to private litigants.

Second, Flagship points out that the *Carey* court stated that cases from other jurisdictions "often turn on the precise language of the policy."  Flagship Motion 19; *Carey*, 189 F.3d at 417. But the language in the Policy's coverage grant and in its definition of Loss does not remove the Policy from the scope of *Carey*'s punitive-or-remedial test.  Flagship points out that part of the definition of Loss includes "other amounts," but ignores that the definition of Loss also provides that such amounts are not Loss if they are penalties.

Flagship also argues that *Carey*'s punitive-or-remedial test cannot apply because the Policy explicitly contemplates coverage for punitive damages in certain circumstances, which it purportedly could not do if all punitive penalties are not covered.  Flagship Motion 20-21, 24.[13] Indian Harbor does not now and has not argued that the definition of Loss precludes any possible coverage for punitive damages, so Flagship is improperly relying on a hypothetical to attempt to create coverage.  *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 107-08 (Pa. 1999) (holding that proper interpretation of insurance policies focuses on facts at issue, not hypotheticals imagined by insured).  Moreover, this argument overlooks the precise language of the policy.  Loss does not include "fines, penalties or taxes *imposed by law*."  Policy, § II(G)(2) (emphasis added).  The penalty clause applies to penalties calculated in accord with a statute, and not to punitive damages calculated by a jury that are ancillary to another cause of action. Accordingly, applying *Carey*'s punitive-or-remedial test to the Policy creates no contradictions

---

[13] Specifically, the Policy contemplates coverage for punitive damages "where insurable by law."  Policy, § II(G). Punitive damages are generally uninsurable under Pennsylvania law.  *See infra* Part V(B)(2).

because even if punitive damages were a "penalty" under the test, they would not be a "penalty imposed by law" and hence would remain within the definition of Loss.  *See, e.g.*, *Tennis v. Ford Motor Co.*, No. 2:10-cv-563, 2010 WL 2978073, at *12 (W.D. Pa. July 29, 2010) ("It is settled law that one cannot recover punitive damages independently from an underlying cause of action." (quotation omitted)); *Hayfield v. Home Depot U.S.A., Inc.*, 168 F. Supp. 2d 436, 458 (E.D. Pa. 2001) (jury weighs various factors to calculate punitive damages, rather than following statutory formula to calculate a penalty); *Sprague v. Walter*, 656 A.2d 890, 920 (Pa. Super. Ct. 1995) (discussing jury's role in calculating punitive damages).

Finally, Flagship points out that the *Carey* court ultimately held that the term "penalty" as used in the policy at issue there was ambiguous as applied to the facts of that case.  Flagship Motion 21; *Carey*, 189 F.3d at 420-21.  But the *Carey* court found the term "penalty" ambiguous in those circumstances *because* the amount at issue in that case "[was] not punitive but remedial."  *Id.* at 420.  In other words, while an amount intended to compensate a party for loss often can be considered a penalty, the term penalty does not always encompass such amounts. But amounts that only punish and do not compensate are unambiguously penalties under *Carey*'s reasoning because such amounts are penalties under any reasonable definition of the term.

c.      Flagship's Preferred Construction of "Penalty" Is Unreasonable

*Carey*'s punitive-or-remedial test controls since Pennsylvania law applies.  But even if it did not, Flagship's arguments regarding the meaning of "penalty" do not show that Flagship is entitled to indemnification coverage under the Policy for the Hartt Action because Flagship's proposed construction of "penalty" is unreasonable.

Flagship argues that a "penalty" is "generally understood" to be payable to a governmental body.  Flagship Motion 14.  But "penalties" often are payable to non-government entities.  *See, e.g.*, 40 PA. CONS. STAT. § 4003(a)(2)(viii) (referring to penalties assessed against

payee by structured settlement transferee); 62 PA. CONS. STAT. § 3935(a) (providing for penalty payable to contractor); *Indian Rocks Prop. Owners Ass'n, Inc. v. Glatfelter*, 950 A.2d 1093, 1096 (Pa. Commw. Ct. 2008) (referring to private property owners' association's ability to assess "fines and penalties" against residents); *Jordan v. Workers' Comp. Appeal Bd. (Philadelphia Newspapers, Inc.)*, 921 A.2d 27, 38 (Pa. Commw. Ct. 2007) (discussing penalty imposed on employer payable to workers' compensation claimant); 14 C.F.R. § 253.7 (regulating ability of airlines to collect penalties from passengers).

The only support Flagship provides for its "general understanding" is its partial quotation of Black's Law Dictionary's definition of "penalty" as "[p]unishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." BLACK'S LAW DICTIONARY 1247 (9th ed. 2009). *Nothing* in that definition limits the "punishment for . . . a civil wrong" as payable only to a government. Conspicuously absent from Flagship's brief is the second definition of "penalty" in Black's, which explicitly undermines Flagship's argument by stating that "penalty" can mean "[a]n extra charge against a party who violates a contractual provision," *id.*, and separately defines "prepayment penalty" without reference to any government, *id.* According to Black's, significant categories of penalties exist that are payable to private parties. Hence Flagship provides no authority for its argument that the word "penalty" is somehow restricted only to government revenues.[14]

---

[14] Flagship also appears to argue that "penalties" must be payable to a government and that "damages" must be payable to a "person." Flagship Motion 14. The implication of Flagship's argument appears to be that by definition a government cannot seek "damages." Of course, this attempt to distinguish damages and penalties makes no sense—both private parties and governments may in various circumstances seek damages, payable as compensation for actual harm, and penalties, imposed by contract or by law to punish and deter.

Flagship also asserts that (i) "fines" and "taxes" are generally payable to governments, (ii) "penalties" often are payable to governments, so (iii) the Court must construe "penalties" as referring only to amounts payable to governments. But the Policy does not say "fines, penalties or taxes *payable to governmental bodies*," and Flagship cannot add that phrase to the plain language of the Policy. In any event, both the premise and the conclusion of Flagship's argument are incorrect.

First, the word "fine" does not necessarily denote an amount payable to a government. *See, e.g.*, *Hicks v. Feiock*, 485 U.S. 624 (1988) (discussing "fines" payable to complainants); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) (discussing "fines" payable to complainants); *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir. 1998) (discussing "fine" payable to plaintiff); *United States v. Wolf*, 90 F.3d 191, 192-194 (7th Cir. 1996) (discussing "fine" payable to private charities); *State v. Kuykendall*, 136 P.3d 983, 987 (Mont. 2006) (analyzing restitution payable to victim as a "fine"); *State v. Izzolena*, 609 N.W.2d 541, 549 (Iowa 2000) (holding restitution payable to victim a "fine" under federal and state constitutions); *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980) (analyzing civil award of treble damages to private plaintiff as a "fine").

Second, even if fines *were* always payable to governments, Flagship's argument still would not logically follow. The argument is akin to arguing that a person who states "I will not eat cherries, apples, or strawberries" must be willing to eat a green apple because, in Flagship's terms, (i) cherries and strawberries are red, (ii) some apples are red, so (iii) the list must refer only to red objects. Instead of this absurd reading, the Court should simply apply the unambiguous language of the Policy—Indian Harbor did not agree to provide liability insurance coverage for any fines, penalties or taxes imposed by law.

Flagship also attempts to read significance into the Texas legislature's use of the word "penalty" in other, non-U.C.C. statutes. Flagship Motion 15. As an initial matter, the premise of Flagship's argument—that the Texas legislature uses the word "penalty" only to refer to amounts payable to a government—is incorrect. *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 601.053 ("penalty" imposed by merchant); TEX. FIN. CODE ANN. § 302.102 ("penalty" collected by lender); *id.* § 393.202 ("penalty" imposed by seller); TEX. GOV'T CODE ANN. § 609.012 ("penalty" charged by vendor).

But Flagship's argument is more fundamentally flawed. The Policy is a Pennsylvania insurance policy, so word choices by the Texas legislature in statutes unrelated to the Hartt Action are not relevant to construing the Policy. Rather, whether the Hartt Action seeks penalties turns on whether § 9.625(c)(2) actually operates to impose a penalty, not whether that statute contains the label "penalty." In other words, the substance of the statute at issue in the Hartt Action matters; the label chosen by legislature that enacted that statute is informative but not outcome-determinative. *Cf. First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 652 n.3 (3d Cir. 1998) (noting "the rejection of the tyranny of labels traditionally attributed to Abraham Lincoln: If you call a tail a leg, how many legs has a dog? Five? No, calling a tail a leg don't *make* it a leg.").

Texas courts repeatedly have emphasized the punitive nature of the statute when plaintiffs receive anything other than compensatory damages. *See, e.g.*, *First City Bank-Farmers Branch, Texas v. Guex*, 677 S.W.2d 25, 29 (Tex. 1984) ("Obviously the drafters of the Uniform Commercial Code intended to provide compensation for actual losses incurred when the secured party acted contrary to statute, or to *penalize* the secured party if the debtor suffered no losses or his losses were less than the statutory *penalty*.") (emphases added); *id.* at 27 (referring to "actual

losses" as distinct from "monetary penalties provided for by statute"); *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 453 (Tex. App. 1998) (summarizing holding of *Guex* regarding "actual damages or statutory penalty"); *All Valley Acceptance Co. v. Durfey*, 800 S.W.2d 672, 677 (Tex. App. 1990) (analyzing whether "the penalty provision of the statute" violated a lender's due process or equal protection rights); *Carroll v. Kennon*, 734 S.W.2d 34, 41 (Tex. App. 1987) (distinguishing "actual losses" and "statutory penalty"); *Garza v. Brazos County Fed. Credit Union*, 603 S.W.2d 298, 301 (Tex. App. 1980) (discussing "penalty" for lender's violation); *Bundrick v. First Nat'l Bank of Jacksonville*, 570 S.W.2d 12, 14, 18, 19 (Tex. App. 1978) (referring to "penalty provisions" of former version of statute and to recovery of "penalties for the failure to give proper notice"); *Hensley v. Lubbock Nat'l Bank*, 561 S.W.2d 885, 891-92 (Tex. App. 1978) (referring five times to statutory "penalty" for improper notification).

Other jurisdictions that have enacted corresponding Uniform Commercial Code provisions likewise characterize their versions of the statute (or its equivalent predecessor version) as providing a "penalty" when plaintiffs do not receive compensatory damages.  *See, e.g.*, *Koresko v. Chase Manhattan Fin. Servs. (In re Koresko)*, 91 B.R. 689, 698 (Bankr. E.D. Pa. 1988) (referring to "whopping penalty" and "penalties" provided under Pennsylvania enactment of the statute); *Jacobs v. Healey Ford-Subaru, Inc.*, 652 A.2d 496, 505 (Conn. 1995) (analyzing Connecticut version of the statute and quoting multiple sources regarding statute's provision of a "penalty"); *In re Schwalb*, 347 B.R. 726, 754-57 & nn.39, 41 (Bankr. D. Nev. 2006) (repeatedly characterizing Nevada enactment of statute as providing for "penalty"); *Erdmann v. Rants*, 442 N.W.2d 441, 443-44 & n.1 (N.D. 1989) (referring multiple times to North Dakota version of the statute's "statutory penalty" and "penalty"); *Kruse v. Voyager Ins. Cos.*, 648 N.E.2d 814, 816-17 (Ohio 1995) (in construing Ohio enactment of statute, quoting multiple sources that characterize

the U.C.C. section as providing a "penalty"); *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 30-33 (Tenn. Ct. App. 1991) (referring multiple times to Tennessee enactment of the statute as providing a "statutory penalty" and "minimum penalty").

Flagship attempts to explain away two of the Texas cases.  Flagship Motion 15-16. Flagship argues that the court in *Guex* did not "consider carefully the distinction between a 'penalty' and 'damages'" because the court used those terms interchangeably, and makes a similar argument with respect to *Garza*.  This approach begs the question—by Flagship's logic, the terms must be distinct because the courts did not "consider carefully" the supposed distinction, so the courts' use of two different terms to refer to the same thing reveals a distinction between the terms.  By contrast, a straightforward reading of the cases reveals that the courts believed they could appropriately describe the statutory recovery as "minimal statutory damages," as the "minimum damage formula," and as a "penalty."

Flagship also questions the applicability of the Texas cases interpreting the statute because the Texas legislature re-enacted the statute under a different section number when it updated its enactment of the U.C.C.  Flagship Motion 16.  There is no relevant distinction between the language of former § 9.507 and of current § 9.625(c)(2).[15]  To the contrary, the Comments to § 9.625 explain that "[s]ubsection (c)(2) leaves the treatment of statutory damages

---

[15] Former § 9.507 provided "[i]f the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price."  *First City Bank-Farmers Branch, Texas v. Guex*, 677 S.W.2d 25, 29 (Tex. 1984).

Current § 9.625(c)(2) provides "if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price."

Flagship does not explain any possible relevance to this case of the substitution of "a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this subchapter" for "the debtor," the substitution of "may recover for that failure" for "has a right to recover," or the substitution of "obligation" for "debt."

as it was under former Article 9."  TEX. BUS. & COM. CODE ANN. § 9.625 cmt. 4.  Accordingly,

cases that interpret former section 9.507's statutory formula remain applicable to interpretation

of the penalty provision in subsection (c)(2) of current section 9.625.

Flagship separately misreads the Comments by implying that Comment 3's statement that

"[d]amages for violation of the requirements of this Article . . . are those reasonably calculated to

put an eligible claimant in the position that it would have occupied had no violation occurred"

applies to subsection (c)(2).  Flagship Motion 13, 16.  The quoted statement in Comment 3

applies to subsections (b) and (c)(1) of the statute, each of which links recovery to actual

damages.  *See* §§ 9.625(b) ("damages in the amount of any loss caused by failure to comply"),

9.625(c)(1) ("may recover damages under Subsection (b)").  By contrast, Comment 4

specifically describes subsection (c)(2), which, unlike the rest of the statute, provides for

recovery "regardless of any injury that may have resulted."  *Id.* cmt. 4; *see also id.* § 9.625(c)(2)

("may recover . . . in any event any amount not less than [the formula]").  The Comments make

crystal clear the fact that section 9.625(c)(2), unlike the rest of the statute, does not condition

relief on actual damages—and that subsection is the sole statutory provision under which the

Hartt Action seeks relief against Flagship.

      2.      <u>The Hartt Action Seeks Amounts Not Insurable Under Pennsylvania Law</u>

Pursuant to the definition of Loss, the Policy only insures punitive damages "where

insurable by law," and does not insure "matters which are uninsurable under the law pursuant to

which this Policy is construed."  Policy, § II(G), II(G)(3).  Under Pennsylvania law, punitive

damages are not insurable unless imposed upon a defendant vicariously liable for the acts of its

agent.  *See, e.g.*, *Butterfield v. Giuntoli*, 670 A.2d 646, 654-55 (Pa. Super. Ct. 1995); *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 100 (Pa. Super. Ct. 1994).[16]

Pennsylvania's prohibition of indemnification of punitive damages extends to the type of recovery that the Hartt Action seeks—statutory damages imposed without regard to harm suffered by the underlying plaintiff in order to punish a defendant for noncompliance with a civil statute.  The United States District Court for the Western District of Pennsylvania recently considered this issue in a case with substantially similar facts.  *See Whole Enchilada, Inc. v. Travelers Prop. Cas. Co.*, 581 F. Supp. 2d 677, 703-04 (W.D. Pa. 2008).  The *Whole Enchilada* court analyzed, under Pennsylvania law, whether a liability insurance policy covered statutory damages sought for technical violations of the Fair and Accurate Credit Transactions Act.  That statute imposes certain technical requirements on businesses' printing of credit card receipts.  *Id.* at 682.  The "damages sought in the allegations of the Complaint [were] not damages for actual sustained injury, but rather, [were] sought pursuant to the provisions of [the statute], which prescribe statutory damages where no actual damage is alleged."  *Id.* at 704.

The *Whole Enchilada* court concluded that because the purpose of the statutory damages was "not to compensate the claimants for any actual monetary or physical loss," the damages were "akin to punitive in nature."  *Id.*  As such, "it would be contrary to Pennsylvania public policy to permit [the insured] coverage for statutory damages."  *Id.*  To support this point, the court cited *Roe*, which noted that with respect to uninsurable punitive damages, "[i]t is the conduct that is being punished, not the victim that is being compensated."  650 A.2d at 100 (quoting *Creed v. Allstate Ins. Co.*, 529 A.2d 10, 12 (Pa. Super. Ct. 1987)).

---

[16] Texas law is more permissive regarding the insurability of punitive damages, but Texas law is not the law pursuant to which the Policy is construed.

As in *Whole Enchilada*, the Hartt Action seeks statutory damages awarded for technical violations of law without alleging or proving any actual harm.  Hence, it seeks damages that, decoupled from victim compensation, are "akin to punitive in nature" and uninsurable.

Moreover, a Pennsylvania court has considered an award of statutory damages under the same U.C.C. provision as is at issue in the Hartt Action to be an award of punitive damages.  *See Koresko v. Chase Manhattan Fin. Servs. (In re Koresko)*, 91 B.R. 689, 702 (Bankr. E.D. Pa. 1988) (refusing to award borrower "*additional* punitive damages" on top of penalty damages awarded under Pennsylvania's predecessor version of the U.C.C. section (emphasis added)).  Applicable Pennsylvania precedent demonstrates that the Hartt Action seeks amounts that are uninsurable under Pennsylvania law.

Flagship has only two arguments against application of *Whole Enchilada*, neither of any merit.  Flagship Motion 18 n.3.  First, Flagship points out that the *Whole Enchilada* underlying complaint alleged "*potential* harm" and "no actual damage."  581 F. Supp. 2d at 704.  Flagship claims that such allegations are "unlike this case."  But Flagship cites only the Hartt Action amended complaint for this proposition, and provides no pinpoint citation to any portion of that complaint—because no portion of the underlying amended complaint alleges any actual damage.[17]  Flagship cannot distinguish *Whole Enchilada* on this ground.  Second, Flagship repeats its argument regarding part of the definition of Loss, discussed above.  Flagship again does not explain why any difference in the policies' insuring agreements matters, nor does it explain why its argument ignores the portion of the definition of Loss at issue—whether the amount is "uninsurable under the law" of Pennsylvania.

---

[17] Each damages allegation in the underlying amended complaint alleges no actual harm, but only requests relief according to the statutory formula:  *See* ¶¶ 3 ("uniform statutory minimum damages"), 5 ("statutory damages"), 24 ("minimum damages"), 25 ("statutory damages are both uniform and intended by the Act, regardless of whether 'actual damages' are greater, lesser or even absent"), 31 ("uniform statutory damages"), 40 ("minimum damages").

Flagship's only other attempt to prove that the Hartt Action does not seek amounts "uninsurable under the law" of Pennsylvania is to cite a pre-*Whole Enchilada* case.  Flagship Motion 22 n.4.  But that case, *BLaST Intermediate Unit 17 v. CNA Ins. Cos.*, 674 A.2d 687, 688 (Pa. 1996), dealt with the insurability of an underlying award of *actual* damages under the Equal Pay Act.  *See* 29 U.S.C. §§ 206(d)(1), 216(b) (providing for actual damages and liquidated damages for violations of the Equal Pay Act).  *BLaST* has no applicability either to the rule laid down in *Whole Enchilada*, which involved "no actual damage," 581 F. Supp. 2d at 704, or to the Hartt Action, which also involves no actual damage.

Since Flagship fails to show that the Hartt Action seeks amounts insurable under the law of Pennsylvania, it does not meet its burden to prove that the indemnification it seeks is within the Policy's definition of Loss.  Pennsylvania public policy prohibits indemnification of statutory damages amounts awarded to punish defendants rather than to compensate plaintiffs.  The Hartt Action seeks such statutory damages.  As a result, the Policy provides no coverage because these amounts are "uninsurable under the law pursuant to which [the] Policy is construed."

### 3.    The Policy is Not Ambiguous

In its final argument attempting to manufacture coverage, Flagship claims that the Policy is ambiguous (having stated on page three of its brief that it "strongly" believes the Policy is not ambiguous).  But a policy "is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction."  *Ryan Homes, Inc. v. Home Indem. Co.*, 647 A.2d 939, 941 (Pa. Super. Ct. 1994).  The Court cannot "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 107-08 (Pa. 1999).  Flagship has not provided any "reasonable interpretation," *id.*, of the Policy's language under which indemnity coverage exists for the Hartt Action.  Instead, Flagship's proposed interpretation adds the words "to any governmental unit"

to the Policy with no textual justification.  Flagship cannot create ambiguity in this manner.

Flagship has failed to meet its burden to show that coverage for the Hartt Action exists under the

unambiguous language of the Policy.

### C.     Flagship's Breach of Contract Claim Is Meritless

Flagship's Complaint contains a count for "breach of contract."  Flagship alleges that

Indian Harbor's denial of indemnification coverage for the Hartt Action and its "denial of any

obligation to attempt to settle the claims asserted in that lawsuit, constitute a material breach of

Indian Harbor's obligations to Flagship under the Policy."  Flagship Compl., ¶ 32.  This

purported breach of contract is untenable if the court grants Indian Harbor's request for

declaratory relief, and in any event the breach of contract claim cannot succeed.

Indian Harbor's obligation under the Policy is to pay Loss, and the definition of Loss

includes only amounts that Flagship "is legally obligated to pay."  Policy, § II(G).  The Hartt

Action court has not entered any judgment or approved any settlement—or even certified any

class.  Hence, Flagship is not legally obligated to pay any amount in connection with the Hartt

Action, and will not be until the court certifies a class and either approves a settlement or enters a

judgment.  Thus, apart from Defense Expenses (which Indian Harbor is advancing), Flagship has

suffered no Loss for Indian Harbor to indemnify.  Only if Flagship became legally obligated to

pay a non-penalty, insurable amount otherwise covered by the Policy and if Indian Harbor then

refused to indemnify Flagship could Flagship have a cause of action for a breach of contract.[18]

---

[18] In its motion for summary judgment Flagship implicitly concedes that it presently has no legal obligation to pay any amount with respect to the Hartt action.  Flagship attaches as an exhibit to its motion a purported settlement agreement that explicitly provides that the agreement is "subject to Court approval," Flagship Motion Ex. J, 4, that it is entered "on a conditional basis that is subject to the final approval of the Court," 9, that Flagship will not pay settlement funds until the ten-day period after preliminary court approval, 10, that the settlement agreement may be deemed null and void ab initio, 7, 15-16, and that Flagship has certain rights to void the settlement, 18.

Because Indian Harbor has not breached any Policy obligation, Flagship's unsupported claim for costs and fees it incurred in filing its Complaint is groundless even if Flagship had any authority for its request.  Flagship's reference to Indian Harbor's "denial of any obligation to attempt to settle" the Hartt Action also is baseless.  Flagship cites no provision of the Policy for this purported obligation.  Nor can it, since the Policy assigns Flagship the duty to defend against any Claim, and Indian Harbor has no duty to defend (or settle) any Claim.  Policy, § V(A).

If the Court grants Indian Harbor's requested declaratory judgment, Flagship's breach of contract claim cannot succeed.  But whatever the ruling on the declaratory judgment issues, the Court should enter judgment in favor of Indian Harbor on the breach of contract claim because the presently-existing facts show that Indian Harbor has not breached the insurance contract.

## VI.    CONCLUSION

Accordingly, Indian Harbor respectfully requests that the Court (i) enter judgment in Indian Harbor's favor on its Counterclaim for declaratory relief, (ii) enter judgment in favor of Indian Harbor and against Flagship on Flagship's claim for declaratory relief and Flagship's claim for breach of contract, and, (iii) deny Flagship's Motion for Summary Judgment.


                                        Respectfully submitted,

                                        WATT BECKWORTH
                                        THOMPSON & HENNEMAN, L.L.P.

                                        */s/ Joseph G. Thompson, III*
                                        Joseph G. Thompson, III
                                        Texas Bar No. 00788534
                                        Federal Bar No. 16780
                                        711 Louisiana, Suite 1800
                                        Pennzoil Place - South Tower
                                        Houston, Texas  77002
                                        Phone: 713-650-8100
                                        Fax: 713-650-8141
                                        jthompson@wattbeckworth.com

OF COUNSEL:

WATT BECKWORTH
THOMPSON & HENNEMAN, L.L.P.

    André C. deLaunay
    Texas Bar No. 24050495
    Federal Bar No. 616392
    711 Louisiana, Suite 1800
    Pennzoil Place - South Tower
    Houston, Texas  77002
    Phone:  (713) 650-8100
    Fax:  (713) 650-8141
    adelaunay@wattbeckworth.com

WILEY REIN LLP

    David H. Topol
    D.C. Bar No. 440209
    Charles C. Lemley
    D.C. Bar No. 449458
    1776 K Street NW
    Washington, DC  20006
    Phone:  (202) 719-7000
    Fax:  (202) 719-7049
    dtopol@wileyrein.com
    clemley@wileyrein.com

**ATTORNEYS FOR DEFENDANT/COUNTERCLAIM-PLAINTIFF
INDIAN HARBOR INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure by electronic mail to all counsel of record by the Clerk of the Court via CM/ECF system on December 14, 2010.

*/s/ Joseph G. Thompson, III*
Joseph G. Thompson, III