**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| **FLAGSHIP CREDIT CORPORATION,** | § | | |
| | § | | |
| **Plaintiff,** | § | | |
| | § | | |
| **vs.** | § | **NO.** | **4:10-cv-3616** |
| | § | | |
| **INDIAN HARBOR INSURANCE** | § | | |
| **COMPANY,** | § | | |
| | § | | |
| **Defendant.** | § | | |

**PLAINTIFF FLAGSHIP CREDIT CORPORATION'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT INDIAN
HARBOR INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY
JUDGMENT**

## TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF THE PROCEEDING.............................................................. 1

II.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW .............................. 1

III.    STATEMENT OF UNDISPUTED FACTS ...................................................................... 1

IV.     ARGUMENT .................................................................................................................... 4

        A.   This Action Raises A Legal Issue For Resolution On An Undisputed
             Factual Record ...................................................................................................... 4

        B.   Under Both Texas And Pennsylvania Law, The Policy Provides
             Indemnification Coverage For The *Hartt* Action ................................................ 5

             1.   Indian Harbor fails to show that there is any conflict between
                  Texas law and Pennsylvania law that requires a choice-of-law
                  analysis ...................................................................................................... 5

             2.   Flagship's construction of the Policy is correct ........................................ 7

             3.   Indian Harbor is incorrect in asserting that the Policy clearly and
                  unambiguously covers only punitive damages awarded by a jury
                  and excludes damages that are punitive in nature when awarded
                  under a statute .......................................................................................... 8

             4.   Indian Harbor fails to show that the construction of the disputed
                  policy language offered by Flagship is an unreasonable one ................. 10

             5.   The statutory minimum damages sought in the *Hartt* Action are not
                  penalties .................................................................................................. 13

        C.   Neither Pennsylvania Nor Texas Public Policy Eliminate Coverage For
             The Damages At Issue In The *Hartt* Action ...................................................... 16

             1.   Indian Harbor concedes, as it must, that there is no Texas public
                  policy precluding indemnification for the settlement amount in the
                  *Hartt* Action ........................................................................................... 16

             2.   There is no basis for Indian Harbor's claim that it would be against
                  Pennsylvania public policy for Flagship to be indemnified against
                  the settlement amount in the *Hartt* Action ............................................ 16

V.      CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Carey v. Employers Mutual Casualty Co.*, 189 F.3d 414 (3rd Cir. 1999) ...................................6, 7

*PMI Mortgage Insurance Co. v. American International Specialty Lines Insurance Co.*, 291 F. App'x 40 (9th Cir. 2008) ....................................................................................5

*Westport Insurance Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444 (M.D. Pa. 2007) .........19

*Whole Enchilada, Inc. v. Travelers Property Casualty Co.*, 581 F. Supp. 2d 677 (W.D. Pa. 2008) .........................................................................................................18, 19

## STATE CASES

*AIG Aviation, Inc. v. Holt Helicopters, Inc.*, 198 S.W.3d 276 (Tex. App.-San Antonio 2006, pet. denied)............................................................................................................5

*All Valley Acceptance Co. v. Durfey*, 800 S.W.2d 672 (Tex. App.-Austin 1990, writ denied)..................................................................................................................15

*BLaST Intermediate Unit 17 v. CNA Insurance Co.*, 674 A.2d 687 (Pa. 1996) ...........................17

*Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419 (Tex. App.-Houston [14th Dist.] 1998, pet. denied)......................................................................................................15

*Bishops, Inc. v. Penn National Insurance*, 984 A.2d 982 (Pa. Super. Ct. 2010) ...........................7

*Bundrick v. First National Bank of Jacksonsville*, 570 S.W.2d 12 (Tex. Civ. App.-Tyler 1978, writ ref'd n.r.e.) .............................................................................................15

*Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1996)..................................................7, 12

*Carter-Wallace, Inc. v. Admiral Insurance Co.*, 712 A.2d 1116 (N.J. 1998)..................................5

*Commonwealth v. James*, __ A.2d __, 2010 WL 4487663 (Pa. Super. Ct. Jan. 4, 2010) ..........6, 8

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984) ......................................................4

*Fairfield Insurance Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653 (Tex. 2008)................16

*Federal Insurance Co. v. Continental Casualty Co.*, No. 2:05-cv-305, 2006 WL 3386625 (W.D. Pa. Nov. 22, 2006) ........................................................................................................19

*First City Bank—Farmers Branch, Texas v. Guex*, 677 S.W.2d 25 (Tex. 1984).........................15

*Garza v. Brazos County Federal Credit Union*, 603  S.W.2d 298 (Tex. Civ. App.-Waco 1980, no writ)................................................................................................................15

*Hall v. Amica Mutual Insurance Co.*, 648 A.2d 755 (Pa. 1994)......................................................17

*Hensley v. Lubbock National Bank*, 561 S.W.2d 885 (Tex. Civ. App.-Amarillo 1978, no writ)...........................................................................................................................15

*Kvaerner v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006)....................................8

*Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d 100 (Pa. 1999) ................................................................................................................................5

*Miller v. Boston Insurance Co.*, 218 A.2d 275 (Pa. 1966) ..........................................................5

*Minnesota Fire and Casualty Co. v. Greenfield*, 855 A.2d 854 (Pa. 2004) ...............................17

*Mohn v. America Casualty Co. of Reading*, 326 A.2d 346 (Pa. 1974) ....................................5, 13

*National Union Fire Insurance Co. of Pittsburgh v. Hudson Energy Co., Inc.*, 811 S.W.2d 552 (Tex. 1991)..............................................................................................5, 13

*Queen City Farms, Inc. v. Central National Insurance Company of Omaha*, 882 P.2d 703 (Wash. 1995).................................................................................................................5

*SMI Realty Management Corp. v. Underwriters at Lloyd's, London*, 179 S.W.3d 619 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) ................................................................11

*Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766 (Pa. Commw. Ct. 1997) ....................................................................................................................6, 18

*Young Refining Corp. v. Pennzoil Oil Co.*, 46 S.W.3d 380 (Tex. App.-Houston [1st Dist.] 2001, pet. denied)........................................................................................................4

## STATE STATUTES

18 Pa. Cons. Stat. Ann. § 2333 .........................................................................................12

18 Pa. Cons. Stat. Ann. § 3209 .........................................................................................12

18 Pa. Cons. Stat. Ann. § 9183 .........................................................................................12

Tex. Health & Safety Code Ann. § 712.009 ..................................................................12

Tex. Ins. Code Ann. § 554.002 .....................................................................................4

Tex. Lab. Code Ann. § 21.2585 ....................................................................................12

## I.      NATURE AND STAGE OF THE PROCEEDING

Plaintiff Flagship Credit Corporation ("Flagship") filed this action seeking declaratory relief and damages for breach of contract stemming from the refusal of Defendant Indian Harbor Insurance Company ("Indian Harbor") to indemnify Flagship against any liability it may incur in an action filed by a Texas resident, Glynn Hartt ("Hartt").  The purported class action was filed by Hartt against Flagship in the United States District Court for the Eastern District of Pennsylvania on behalf of himself and a group of Texas residents for damages and amounts claimed to be due for alleged technical violations of Section 9.625 of the Texas Business and Commerce Code ("the *Hartt* Action").

On November 23, 2010, Flagship filed its Motion for Summary Judgment (the "Flagship Motion") seeking a judgment that the damages and other amounts sought by Hartt, and the settlement amount in the *Hartt* Action, are covered Loss under the insurance policy issued by Indian Harbor to Flagship (the "Policy").  On December 14, 2010, Indian Harbor filed an Opposition to the Flagship Motion and a Cross-Motion for Summary Judgment (collectively, the "Indian Harbor Motion") seeking a declaration that the Policy provides no indemnity coverage for the *Hartt* Action.  Flagship hereby files this consolidated brief in further support of the Flagship Motion and in opposition to the Indian Harbor Motion.

## II.      STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Flagship incorporates by reference the Statement of Issues and Standard of Review stated in the Flagship Motion.

## III.      STATEMENT OF UNDISPUTED FACTS

Flagship incorporates its Statement of Undisputed Facts set out in the Flagship Motion and the documents attached as exhibits A through M to that Motion.

Indian Harbor does not dispute the authenticity of exhibits B through M to the Flagship Motion.  (Indian Harbor Motion at 2.)  As to exhibit A, Flagship attached a true and correct copy of the pertinent provisions of the Policy.  Flagship admits that the document attached as exhibit A to the Indian Harbor Motion is a complete copy of the Policy.  Flagship does not contest the authenticity of exhibits Q, R, S, T, U, and V to the Indian Harbor Motion.  As to the statements of allegedly undisputed facts in the Indian Harbor Motion:

24-28.  Admitted.

29-30.  The statements in paragraphs 29 and 30 of the Indian Harbor Motion reference the terms of conditions of the Policy, which, being a writing, speaks for itself, and any characterization thereof intended to be a legal construction of the Policy language is denied.

31.     The statements in paragraph 31 constitute a characterization of the *Hartt* Action which is denied because the allegations in the complaint in that action are in writing and speak for themselves.  By way of further answer to the statement in this paragraph, Flagship agrees with Indian Harbor that, at most, the *Hartt* Action alleges only "purported technical violations" of the Texas statute that is the basis for that action.

32.     Flagship denies that the allegations in the memorandum of law referenced in paragraph 32 are stated in their entirety.  That memorandum, being in writing, speaks for itself. and any characterization thereof is denied.  The statement contained in paragraph 32 does not necessarily fully and accurately set forth the terms of the settlement of the *Hartt* Action, and is to a large extent irrelevant to the issue of whether Indian Harbor is obligated to pay the settlement of the *Hartt* Action that was later negotiated and is in the process of being finalized.

By way of further explanation, the settlement provides three categories of benefits to class members:

(a) Cash payment.  Flagship has agreed to create a settlement fund in the amount of $2,500,000.00.  The settlement amount is inclusive of class counsel's fees and costs as approved by the Court.  This fund (less court awarded attorney fees and expenses) will be distributed to class members *pro rata* based on their statutory damages.  Cash payments will therefore be different for each class member but are expected to range between $330.00 and $3,300.00.

(b) Deficiency balance relief.  Flagship has agreed to waive and release any claim to deficiency balances owed by class members and satisfy any outstanding deficiency judgments.

(c) Credit reporting relief.  Flagship has agreed to ask the credit reporting bureaus to fix or remove their negative Flagship reporting with respect to class members.  (Class Action Settlement Agreement and Release, attached hereto as Exhibit W.)

33.     The statement in paragraph 33 references a July 7, 2010 decision of the court in the *Hartt* Action, which decision is in writing and speaks for itself, and Indian Harbor's quote of a portion of the decision is not relevant to the issue before this Court.

34.     It is admitted that paragraph 34 references a letter sent from counsel for Flagship in the *Hartt* Action to Indian Harbor under and pursuant to a joint defense privilege; however, it is denied that any statements made in that letter are relevant to the question of the scope of the coverage for Flagship in the *Hartt* Action.

35.     The statement in paragraph 35 is not relevant to the coverage issue raised in this action because the Policy expressly covers liability incurred by Flagship for "damages," "punitive or exemplary damages" and/or "other amounts" for which Flagship is liable.  By way of further answer, the settlement in the *Hartt* Action provides that members of the settlement

class may not seek to recover any other damages or any other amounts from Flagship besides the amounts they receive in the settlement.

IV.    **ARGUMENT**

A.    **This Action Raises A Legal Issue For Resolution On An Undisputed Factual Record.**

Indian Harbor does not dispute that, in the absence of a true conflict of law, Texas courts do not undertake a choice-of-law analysis. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984). Rather, it argues that Pennsylvania and Texas law are materially different on the issues raised by the Flagship Motion and the Indian Harbor Motion. (Indian Harbor Motion at 7-8.) Indian Harbor is incorrect. Pennsylvania and Texas law are the same on these issues. Therefore, there is no need for this Court to engage in a choice-of-law analysis. *See Young Refining Corp. v. Pennzoil Oil Co.*, 46 S.W.3d 380, 385 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). Instead, under established rules regarding choice-of-law, the Court should apply Texas law, under which Flagship is entitled to indemnification for the liabilities incurred in the *Hartt* Action. However, even if Pennsylvania law applied, Flagship would still be entitled to coverage.

Neither does this case turn on the assignment of the burden of proof. Indian Harbor's argument that Flagship bears the burden of proving "that it is not seeking coverage for amounts that constitute penalties or that are uninsurable under Pennsylvania law" is not only incorrect,[1] it

---

[1]      Indian Harbor incorrectly asserts that, "[b]ecause the applicable Policy provisions are part of the Policy's coverage grant, Flagship bears the burden of proving . . . that it is not seeking coverage for amounts that constitute penalties or that are uninsurable under Pennsylvania law." (Indian Harbor Motion at 8.) Pursuant to Texas statute, in insurance coverage actions, "the insurer . . . has the burden of proof as to any avoidance or affirmative defense." Tex. Ins. Code Ann. § 554.002. Further, "[l]anguage of exclusion in the contract or an exception to coverage claimed by the insurer  . . . constitutes an avoidance or an affirmative defense." *Id.* Similarly, in Pennsylvania, when an insurer relies on a policy exclusion as the basis for its denial of coverage, the insurer has the burden of proving that the exclusion applies. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

is irrelevant. The parties do not dispute the nature of the underlying case that triggered this coverage action. This action presents purely legal issues—namely the proper interpretation of an insurance policy—that do not turn on the resolution of disputed issues of fact.

**B.** **Under Both Texas And Pennsylvania Law, The Policy Provides Indemnification Coverage For The *Hartt* Action.**

    1.    *Indian Harbor fails to show that there is any conflict between Texas law and Pennsylvania law that requires a choice-of-law analysis.*

Indian Harbor does not argue that Texas and Pennsylvania law differ regarding the interpretation of insurance contracts. Under both states' law, an insurance policy must be interpreted according to its plain language, with any ambiguity resolved in favor of the insured. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991); *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346, 351 (Pa. 1974).

Nor does Indian Harbor offer any case law to support the position that Texas and Pennsylvania law differ on the interpretation of the exclusionary language for "fines, penalties or

---

    Indian Harbor argues that because the exclusion for "fines, penalties or taxes imposed by law" is included in the part of the Policy under the heading "Loss," rather than listed under the "Exclusions" heading in the Policy, Flagship bears the burden of proving that the exclusion does not apply. (Indian Harbor Motion at 11.) But neither Texas nor Pennsylvania courts follow such a strict, overly technical assignment of the burden of proof. *See, e.g.*, *Miller v. Boston Ins. Co.*, 218 A.2d 275 (Pa. 1966) (placing burden of proof on insurer to establish exception to coverage where exception appeared in coverage grant); *AIG Aviation, Inc. v. Holt Helicopters, Inc.*, 198 S.W.3d 276, 284 (Tex. App.-San Antonio 2006, pet. denied) (finding that even though pilot qualification was a condition precedent to coverage under policy, burden of proof was on insurer to establish causal connection between unqualified pilot and accident to avoid coverage). To hold otherwise would be to allow insurers to avoid their burden of proof simply by listing exclusions in the coverage grant section of a policy, rather than in a separate exclusions section. *See Carter-Wallace, Inc. v. Admiral Ins. Co.*, 712 A.2d 1116, 1126 (N.J. 1998) ("[E]xclusions do not shed their essential character when they are moved from one section of a policy and are crafted as part of that policy's grant of coverage. We therefore decline to adopt a rule of law governing burden of proof the application of which would depend merely on the location of a provision in an insurance contract."); *PMI Mortgage Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 291 F. App'x 40, 41 (9th Cir. 2008) ("The policy language in question, although part of the 'Insuring Agreement,' clearly functions as an exception to the definition of 'Loss,' the functional equivalent of an exclusion to coverage, the burden of proof of which falls upon the insurer.").

    Finally, *Queen City Farms, Inc. v. Central National Insurance Company of Omaha*, 882 P.2d 703 (Wash. 1995), to which Indian Harbor cites, is not relevant here. In that case, the court placed the burden of proving that the harm was not subjectively intended on the insured because the insured was regarded as being in possession of the evidence relevant to its subjective intent. *Id.* at 716. There is no such factual issue presented here where Flagship faces liability for what Indian Harbor concedes are technical violations of a notice requirement. (Indian Harbor Motion at 4.) Further, the "quotation" from *Queen City Farms* to which Indian Harbor cites (*Id.* at 11), is a reference to an article stating the insurance industry's position, and not a statement by the court. 882 P.2d at 715-16.

taxes imposed by law" that is actually found in the Policy.  In fact, there is no Texas or Pennsylvania case addressing the proper interpretation of an insurance policy that provides, *as does the Policy*, that covered "Loss" includes "damages," "judgments," "settlements," "punitive or exemplary damages," and/or "other amounts" for which the insured is legally liable, and then carves out from that broad coverage grant "fines, penalties or taxes imposed by law."

Indian Harbor attempts to show a conflict between the law of Texas and Pennsylvania by arguing that "Pennsylvania has directly applicable precedent" where "Texas does not."  (Indian Harbor Motion at 8.)  The supposed "precedent" is the decision in *Carey v. Employers Mutual Casualty Co.*, 189 F.3d 414 (3rd Cir. 1999).  This argument fails for two reasons.  First, Indian Harbor cites no authority for the proposition that the existence of a similar case in one jurisdiction, rather than a difference in dispositive law between two jurisdictions, triggers a choice-of-law analysis, particularly where, as with *Carey,* the case is a federal court decision that is, at best, a prediction of how a state court might rule on an issue.  *See Commonwealth v. James*, __ A.2d __, 2010 WL 4487663, at *6 n.4 (Pa. Super. Ct. Jan. 4, 2010) ("Decisions of federal courts other than the United States Supreme Court are not binding on Pennsylvania state courts."); *Weaver v. Pa. Bd. of Prob. and Parole*, 688 A.2d 766, 772 n.11 (Pa. Commw. Ct. 1997) ("Courts of this Commonwealth are not required to follow federal courts on federal questions, let alone on questions involving state law.").  Second, and even more importantly, *Carey* is not relevant, much less controlling, here because the policy language construed in that case was fundamentally different than the language in the Policy.

In *Carey*, the Third Circuit concluded: "the available case law suggests that an exclusion for fines and penalties, where those terms are undefined in the policy, allows an insurer to deny coverage when the item to be covered is punitive, rather than merely compensatory."  183 F.3d

at 419.  Indian Harbor argues that the statutory damages at issue here are punitive in nature, and therefore, under *Carey*, they are excluded as "penalties."  (Indian Harbor Motion at 10.)  However, *Carey* did not involve policy language such as that contained in the Policy, whereby there is an *express grant of coverage* not only for "damages," but also for "punitive or exemplary damages" or "other amounts," including class counsel fees which make up a large portion of the settlement amount in the underlying case, for which the insured is legally liable.  Thus, the *Carey* approach to the language at issue in that case does not provide any guidance to this Court, which is presented with a policy that expressly covers damages that are punitive in nature and "other amounts" like counsel fees.

2.      *Flagship's construction of the Policy is correct.*

Insurance policies are contracts of adhesion.  *See Bishops, Inc. v. Penn Nat'l Ins.*, 984 A.2d 982, 989 (Pa. Super. Ct. 2010).  They are drafted by the insurance company and offered on a take it or leave it basis without any negotiation of the policy language.  *Id*. at 989 n.4.  They are to be construed as they would be by a reasonable person and not as they might be by a lawyer faced with a coverage dispute.  *See Butterfield v. Giuntoli*, 670 A.2d 646, 653 (Pa. Super. Ct. 1996) (holding, in order to determine whether an insurance claim comes within the policy's coverage, the "proper focus . . . is the reasonable expectations of the insured at the time of the purchase").  Policy language that is clear and unambiguous will be construed as written.  However, policy language is ambiguous where it is reasonably susceptible to different interpretations.  *Id*. at 652 n.8.  Any reasonable construction of ambiguous policy language offered by the insured will be adopted even if it is not the most reasonable construction of the disputed language.  *Id*. ("[I]f a policy is reasonably susceptible of two interpretations, it must be construed in the insured's favor so as not to defeat, unless clearly necessary, the claim to indemnity which the insured intended to obtain.").

A reasonable policyholder would conclude that the Policy covers liability for amounts that are punitive in nature because the Policy expressly and unqualifiedly states that it provides such coverage — that is, coverage for "*punitive or exemplary damages*."  Thus, whether the statutory damages sought in the *Hartt* Action are compensatory, punitive, exemplary, or other amounts does not matter because the Policy expressly provides coverage for all such types of loss.[2]

However, even if there is some ambiguity in the scope of coverage afforded by the Policy for the statutory damages sought in the *Hartt* Action because of the exclusionary language for "fines, penalties or taxes imposed by law," the construction offered by Flagship is, *at a minimum*, one reasonable construction of that language.  In other words, an average person certainly could have reasonably construed that the broad coverage grant means what it says and that the exclusionary language is meant to carve out only certain types of payments that are commonly thought of as being due to the government.  (Flagship Motion at 14.)

3.    *Indian Harbor is incorrect in asserting that the Policy clearly and unambiguously covers only punitive damages awarded by a jury and excludes damages that are punitive in nature when awarded under a statute.*

Indian Harbor claims Flagship's construction of the Policy is unreasonable and it asserts that the express grant of coverage for "punitive or exemplary damages" in the Policy should be read by a reasonable policyholder as clearly and unambiguously stating that Indian Harbor is promising to cover only "punitive damages *calculated by a jury that are ancillary to another*

---

[2]    In fact, Indian Harbor's own conduct evidences the fact that Indian Harbor thought the damages sought in the *Hartt* Action were covered:  Indian Harbor agreed to pay, and has paid, defense costs in the *Hartt* Action. "Although, however, the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage."  *Kvaerner v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 n.7 (Pa. 2006).  If there is no potential duty to indemnify, there would be no duty to defend.  *Id.*  Indian Harbor's proper conduct in paying for defense costs reflects its understanding that the *Hartt* Action seeks covered loss.

*cause of action*."  (Indian Harbor Motion at 13-14 (emphasis added).)  It also claims that the exclusion for "fines, penalties or taxes" should be read by a reasonable policyholder as clearly and unambiguously stating that there is no coverage for "penalties [i.e., amounts that are "punitive in nature"] *calculated in accord with a statute*."  (*Id.* (emphasis added).)  In other words, Indian Harbor contends that the Policy clearly and unambiguously tells the policyholder the following: "You are covered for damages, including punitive or exemplary damages, as well as other amounts, for which you are liable; however, the coverage for punitive or exemplary damages is limited to an award of punitive damages by a jury that is ancillary to the award of compensatory damages by the jury, because the exclusion for "penalties" means there is no coverage for amounts that are punitive in nature when the liability for such amounts is imposed under, and in accordance with, a statute."

The Policy does not clearly and unambiguously say what Indian Harbor claims it says. Only by adding restrictive qualifying phrases to the terms "punitive or exemplary damages" and "fines, penalties or taxes" can Indian Harbor cobble together its construction of the Policy. However, Indian Harbor fails to explain how or why a reasonable policyholder would parse the relevant policy language in this way.  There is nothing in the words "punitive or exemplary damages" or in the context in which these words are used, that would lead an average person to conclude that he must qualify them to mean that there is coverage for such damages only when they are awarded by a jury.  If Indian Harbor wanted to add a restriction on the scope of this term it either could have defined the term in the Policy, which it failed to do, or it could have added the clause that it now wants this Court to add to the Policy to allow it to avoid any coverage obligation to Flagship.

Likewise, Indian Harbor fails to explain how or why a reasonable policyholder would parse the phrase "fines, penalties or taxes imposed by law" to mean that, as used in this context, "penalties" means any imposition of damages that are punitive in nature when they are imposed by statute as opposed to when they are awarded by a jury to a civil litigant.  Indian Harbor argues that the phrase "imposed *by law*" that follows "fines, penalties, or taxes" supports its interpretation of the penalties exclusion as applying only to penalties "calculated in accord with a statute" as opposed to "punitive damages calculated by a jury."  (Indian Harbor Motion at 13.) However, in so arguing, Indian Harbor ignores the fact that the clause providing coverage for "punitive or exemplary damages," which Indian Harbor argues applies exclusively to damages calculated by a jury, is also followed by the phrase, "where insurable *by law*."  Thus, Indian Harbor's own interpretation of the Policy is inconsistent, and could not have been the understanding of a reasonable insured.

In short, the Indian Harbor construct that "punitive damages or exemplary damages" covers *only* such damages assessed by a jury, while "fines, penalties or taxes imposed by law" means — among other things — *any* award of damages to a civil litigant under a statute that may be (at least in part) punitive in nature is not supported by the plain and unambiguous language of the Policy.

4.      *Indian Harbor fails to show that the construction of the disputed policy language offered by Flagship is an unreasonable one.*

Indian Harbor contests Flagship's construction of the disputed policy language because it supposedly results in the adding of the words "payable to a governmental body" as a limitation on the scope of the exclusion for "fines, penalties or taxes," and there are instances where penalties are "payable to non-government entities."  (Indian Harbor Motion at 14-15, 16.)  Indian

Harbor claims that "Flagship cannot add that phrase to the plain language of the policy." (*Id.* at 16.)

This argument is unpersuasive for several reasons. First, as explained, the language in issue does not plainly and unambiguously say what Indian Harbor says it does. Thus, even if the Policy need not be read as Flagship claims it must, the Policy is, at best, ambiguous. The construction advanced by Flagship, whereby the fact that the words "fines, penalties or taxes" are used together evidences an intent that the language carves out only those amounts paid to the government, is certainly a reasonable construction. The average person would conclude that when he must pay a "fine" or when he must pay "taxes," the amounts are paid to the government. (Flagship Motion at 14.) When "penalties" is used after "fine" and before "taxes," the context certainly would connote to a reasonable person that a "penalty, like a "fine" or a "tax," means an amount paid to the government. (*Id.*) Thus, Flagship is not artificially adding a phrase to the Policy but rather construing the meaning of the word "penalties" in the context in which it is used and in the context of the Policy as a whole, including the express grant of coverage for "damages," "punitive or exemplary damages" or "other amounts" for which Flagship may be held liable. *See SMI Realty Mgmt. Corp. v. Underwriters at Lloyd's, London*, 179 S.W.3d 619, 624 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (stating Texas courts "construe the terms of the contract as a whole and consider all of its terms, not in isolation, but within the context of the contract").

Second, Indian Harbor's approach is illogical. It goes first to the word "penalties," while ignoring the context in which that word is used (as part of the phrase "fines, penalties or taxes"), and recognizes that it cannot be construed to mean damages that are punitive in nature, as discussed in *Carey* when dealing with fundamentally different policy language, because to do so

11

would eviscerate entirely the express grant of coverage for "punitive or exemplary damages." (Indian Harbor Motion at 10, 13-14.)  It therefore tries to find a way to harmonize the coverage grant for "punitive or exemplary damages" and the exclusion of "penalties" so as to justify its denial of coverage.  (*Id*. at 13.)  This leads to the strained analysis, nowhere supported by the language of the Policy, whereby "penalties" is read to mean any damages that are punitive in nature that are imposed by statute and "punitive or exemplary damages" is read to mean any damages that are awarded by a jury ancillary to a compensatory damages award.  (*Id*. at 13-14.)

Third, Indian Harbor's argument that that there are instances where "fines" are paid to civil litigants misses the mark.  (*Id*. at 16.)  Whether Indian Harbor can scour the Pennsylvania statutes and find several instances where "fines" are paid to private litigants is beside the point — insurance policy interpretation turns on how a reasonable insured would understand the policy language at issue.  *See Butterfield*, 670 A.2d at 653.  Moreover, even if Indian Harbor's argument were persuasive, Indian Harbor's construction overlooks the fact that, contrary to its interpretation of the Policy language, there are many instances in which punitive damages are calculated in accordance with a statute, rather than by a jury.  *See, e.g.*, 18 Pa. Cons. Stat. Ann. § 3209 (prescribing "punitive damages in the amount of $5,000" for knowing violation of the statute); *id*. at § 9183 (imposing "punitive damages of not less that $1,000 nor more than $10,000" for statutory violations); *id*. at § 2333 (stating "punitive damages of not less than $1,000 nor more than $10,000 shall be imposed" for a violation of the statute); Tex. Health & Safety Code Ann. § 712.009 (imposing "punitive damages not to exceed $10,000" on violator); Tex. Lab. Code Ann. § 21.2585 (prescribing scheme governing amount of court-awarded punitive damages).  Under Indian Harbor's construction, no such awards of punitive damages would be covered because they would be awarded "in accord with a statute" and not "calculated

by a jury."  Thus, there is no basis in the language of the Policy to draw the distinction that Indian Harbor now attempts to draw.

Fourth, and finally, assuming, *arguendo*, that Indian Harbor's interpretation were even one reasonable construction of the Policy, it is certainly no more reasonable a construction than that offered by Flagship.  The simple fact is that Indian Harbor drafted the Policy in a way that it is, *at best*, ambiguous as to whether it provides coverage for any portion of the settlement amount in the *Hartt* Action that might be said to be in some way "punitive."  Under settled Texas and Pennsylvania law, the ambiguity must be resolved in favor of *any* reasonable interpretation offered by Flagship.  *See Hudson Energy*, 811 S.W.2d at 555; *Mohn*, 326 A.2d at 351, and Flagship has offered a reasonable construction of the Policy.

5.      *The statutory minimum damages sought in the* Hartt *Action are not penalties.*

Indian Harbor acknowledges that the interpretation of the Texas Business and Commercial Code § 9.625 is a matter of Texas law.  (Indian Harbor Motion at 17-20.)  Indian Harbor's assertion that "[t]he Hartt Action seeks only amounts that penalize, and does not seek amounts that compensate for actual harm suffered," (*Id*. at 11), reflects a misunderstanding of both the amount in issue in the *Hartt* Action and the operation of Texas Business and Commercial Code § 9.625(c)(2).

In the *Hartt* Action, the Court found that "Plaintiff seeks minimum damages under Tex. Bus. & Comm. Code §9.625(c)(2)."  (*See* Exhibit M, Order of July 8, 2010, at 3 n.1.)  In discussing the burden of proof on consumer use, the Court referred to the amount as "the minimum statutory amount" and as "minimum statutory damages."  (*Id*. at 6.)  In considering the relationship of the statutory minimum to actual damages the Court held that: "Hartt concedes that the class will only seek recovery of the statutory minimum.  *Class members with actual damages*

13

*exceeding the minimum statutory uniform damages* will be afforded an opportunity to opt out of the class to pursue their own claims."  (*Id*. at 7 (emphasis added).)

The amount in issue therefore does compensate the class members for any actual damages they had, and is the only compensation they will get for their actual damages, unless their actual damages exceed the statutory damage formula.  Only if a class member believes that he or she can prove actual damages exceeding the statutory damage formula would the member want to consider opting out of the class.  A class member whose actual damage claim equals or is less than the statutory damage formula would simply take the statutory formula amount in satisfaction of his or her damages claim.  Moreover, if the member does not opt out, the class member's acceptance of damages calculated under the statutory formula precludes any subsequent claim for damages.  (Exhibit W, Class Action Settlement Agreement and Release ¶ 1.11.)

The Court's determination is consistent with the statute.  Under the statute, an aggrieved debtor may recover damages, and if the goods are consumer goods, the aggrieved debtor may at least recover damages calculated under the statutory damage formula unless the debtor proves greater damages.  (Flagship Motion at 17.)

Thus, both the Court's holdings in the *Hartt* Action and the statute disprove Indian Harbor's assertion that the action seeks only amounts that may be said to be "punitive" and not amounts that are compensatory and/or remedial.  The amounts in issue are damages computed under a statutory formula which a debtor can recover unless the debtor proves a greater amount of damage, not a penalty that can be recovered in addition to actual damages.

Indian Harbor asserts that "Texas courts repeatedly have emphasized the *punitive* nature of the statute when plaintiffs receive anything other than compensatory damages," followed by a

string cite to various Texas cases in which courts use the word "penalty" in connection with the statutory minimum damages.  (Indian Harbor Motion at 17-18 (emphasis added).)  Indian Harbor's assertion is not supported by the cases it cites.  None of the cited cases involved a court *holding* that the minimum damages formula in fact constitutes a penalty.  Much less do any of these cases shed any light on whether the statutory formula should be considered a penalty within the meaning of an insurance policy such as the Policy, where coverage is expressly granted for "damages," "punitive or exemplary damages," and "other amounts" for which the insured may be held liable.  Rather, they are simply cases in which courts happened to use the word "penalty" in reference to the minimum damages, sometimes simply restating the arguments made by the debtor or creditor.  In some of the cases, the Court did not even reach the issue as to the amount to be recovered because the plaintiff failed to prove that the goods were consumer goods, which is a prerequisite to recover the amount in issue.  *See, e.g, Bundrick v. First Nat'l Bank of Jacksonsville*, 570 S.W.2d 12, 19 (Tex. Civ. App.-Tyler 1978, writ ref'd n.r.e.); *Hensley v. Lubbock Nat'l Bank*, 561 S.W.2d 885 (Tex. Civ. App.-Amarillo 1978, no writ).  *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419 (Tex. App.-Houston [14th Dist.] 1998, pet. denied), was a commercial case and the statutory formula damages in issue in the *Hartt* Action were therefore not in issue.  Moreover, in some of the cases, the courts referred to the amount as "damages." *See, e.g*., *First City Bank—Farmers Branch, Texas v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984) (also referring to "minimal damages under the statutory formula" and making clear that the debtor's recovery of the minimum amount bars any further recovery for actual damages); *All Valley Acceptance Co. v. Durfey*, 800 S.W.2d 672, 675 (Tex. App.-Austin 1990, writ denied) (noting that a debtor does not have to prove other damages because "*damages* are specifically provided for in § 9.507 of the Code") (emphasis added; *Garza v. Brazos County Fed. Credit Union*, 603

S.W.2d 298, 300-01 (Tex. Civ. App.-Waco 1980, no writ) (also calling the minimum damages a "formula" and the "minimum recovery").

In sum, under both the Court's holdings in the *Hartt* Action and the statute, the amount in issue is a damage recovery under a statutory formula which includes, and is not in addition to, the debtor's recovery of actual damages up to that amount.  The ordinary insured purchasing a policy could reasonably believe that these damages were covered under a policy that defines "Loss" as including "damages," "judgments," "settlements," "punitive or exemplary damages," and/or "other amounts" for which the insured is legally liable, and could reasonably believe that they were not within an exclusion for "fines, penalties or taxes imposed by law."

### C.   Neither Pennsylvania Nor Texas Public Policy Eliminate Coverage For The Damages At Issue In The *Hartt* Action.

1.   *Indian Harbor concedes, as it must, that there is no Texas public policy precluding indemnification for the settlement amount in the* Hartt *Action.*

Under Texas law, punitive damages are insurable where (a) the Texas legislature has not expressly prohibited or limited the availability of such insurance, and (b) such insurance does not violate Texas public policy.  *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 655 (Tex. 2008).  Here, the Texas legislature has not expressed any intent to prohibit the insurability of damages available under Texas Business and Commerce Code § 9.625, and insuring such damages does not violate Texas public policy.  (Flagship Motion at 21-22.)  Indian Harbor appears to concede that the statutory damages at issue here are insurable under Texas law.  (Indian Harbor Motion at 21 n.16.)

2.   *There is no basis for Indian Harbor's claim that it would be against Pennsylvania public policy for Flagship to be indemnified against the settlement amount in the* Hartt *Action.*

Given the state of Texas law, Indian Harbor tries to avoid any coverage obligation by asserting that Pennsylvania law applies and that Pennsylvania public policy prohibits Flagship

16

from insuring against any liability for statutory damages under Texas Business and Commerce Code § 9.625.  (Indian Harbor Motion at 20-23.)  Even assuming *arguendo* that Pennsylvania law applied to the construction of the Policy, Indian Harbor's argument fails because under Pennsylvania law it is not against public policy for Flagship to obtain insurance for any liability for statutory damages under Texas Business and Commerce Code § 9.625.

Indian Harbor incorrectly states that, under Pennsylvania law, "punitive damages are not insurable *unless* imposed upon a defendant vicariously liable for the acts of its agent."  (Indian Harbor Motion at 20-21 (emphasis added).)  While Pennsylvania law permits insurance coverage for punitive damages awards in vicarious liability cases, that is not the only type of case in which it is not violative of Pennsylvania public policy to insure against damages that may be regarded as punitive in nature.  Contrary to Indian Harbor's assertion that punitive damages are generally uninsurable in Pennsylvania, the Pennsylvania Supreme Court has made clear that a public policy may be the basis for altering the terms of an insurance contract "[o]nly in the clearest cases."  *Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 761 (Pa. 1994) (finding it was "beyond judicial authority" to declare territorial limitation in insurance contract void as against public policy).

In *BLaST Intermediate Unit 17 v. CNA Insurance Co.*, 674 A.2d 687, 691 (Pa. 1996), the Pennsylvania Supreme Court held that statutory damages are uninsurable when:  (1) the insured's conduct was willful or intentional; and (2) insurance would result in a windfall for the insured.  As the Supreme Court explained in *Minnesota Fire and Casualty Co. v. Greenfield*, 855 A.2d 854, 867 (Pa. 2004), *BLaST* "determined that there was no legitimate public policy reason to disallow a loss caused by a negligent statutory violation."  Indian Harbor cannot prove that

this case presents either of the factors that would permit the Court to take the drastic step of forfeiting the coverage for which Flagship paid a premium on public policy grounds.

First, Indian Harbor has not and cannot prove that the settlement of the *Hartt* Action involves or is based upon evidence of a willful or intentional violation of Texas Business and Commerce Code § 9.625 by Flagship.  The Complaint in the *Hartt* Action alleges only a good faith violation of a technical provision of Section 9.625.  It does not assert any willful or intentional conduct of Flagship in violation of the statute.  (Exhibit F at ¶¶ 21-23.)  Moreover, proof of such conduct is not required to establish liability under Texas Business and Commerce Code § 9.625(c)(2), which is a strict liability statute, and there is no evidence of any such conduct.  Even Indian Harbor concedes that the *Hartt* Action involves only "*technical violations by Flagship of legal requirements for certain notices to delinquent auto-loan borrowers.*"  (Indian Harbor Motion at 4 (emphasis added).)

Indian Harbor tries to avoid *BLaST* by claiming that *Whole Enchilada, Inc. v. Travelers Property Casualty Co.*, 581 F. Supp. 2d 677 (W.D. Pa. 2008) establishes as Pennsylvania law a rule that it is against the public policy of the Commonwealth to insure against statutory damages. (Indian Harbor Motion at 21-22.)  Indian Harbor's argument is simply incorrect.  The *Whole Enchilada* court did not rule that statutory damages are uninsurable, which would have been contrary to the decision of the Pennsylvania Supreme Court in *BLaST*.[3]  In *Whole Enchilada*, the statute that was the basis for the insured's liability required, and the underlying complaint in the action against the insured alleged, a "willful violation or wrongdoing."  581 F. Supp. 2d at 703.

---

[3]        As an initial matter, Indian Harbor appears to suggests that *Whole Enchilada* trumps *BLaST* because it was decided later.  (Indian Harbor Motion at 23.)  This cannot be, as *Whole Enchilada* was decided by a United States District Court interpreting Pennsylvania law, and a federal district court cannot overrule a Pennsylvania Supreme Court case deciding a question of Pennsylvania law.  *See James*, 2010 WL 4487663, at *6 n.4; *Weaver*, 688 A.2d at 772 n.11.

The *Whole Enchilada* Court specifically stated that "the purpose of the statutory damages provision" at issue was to "compensate the plaintiffs for *willful* non-compliance" and that "statutory damages are available only for *willful* violations . . . *not for mere negligence*." *Id*. at 704 (emphasis added). Based on that statute, which is fundamentally different from Texas Business and Commerce Code § 9.625 at issue here, the *Whole Enchilada* court held that "damages arising from conduct in which a defendant intentionally violates the rights of the plaintiff" are uninsurable as a matter of public policy. *Id*. at 704. Thus, the rationale and holding in *Whole Enchilada* is entirely consistent with the holding in *BLaST* that only willful or intentional statutory violations are uninsurable as against Pennsylvania public policy. Neither *BLaST* nor *Whole Enchilada* offer any support for Indian Harbor's claim that it would violate Pennsylvania public policy for Flagship to obtain insurance for the good faith, technical violation alleged against it in the *Hartt* Action.

Second, *BLaST* held that an insurer was not relieved from its obligation to indemnify the insured for losses incurred as the result of the insured's violation of a federal statute where the insured would not receive a windfall upon indemnification by the insurer for the financial consequences of the statutory violation. 674 A.2d at 690-91. Federal court decisions have followed this teaching of *BLaST*. *See Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 453 (M.D. Pa. 2007) (holding it was not against public policy to indemnify law firm insured for amounts a former lawyer unlawfully obtained from a client, because indemnification would "result in no windfall" for the firm); *Fed. Ins. Co. v. Cont'l Cas. Co.*, No. 2:05-cv-305, 2006 WL 3386625, at *23 (W.D. Pa. Nov. 22, 2006) (finding public policy did not render loss uninsurable because the insured would not receive a windfall). Here, as was the case in *BLaST Intermediate*, *Hanft & Knight* and *Federal Insurance*, coverage does not provide any windfall to

Flagship, and, thus, there is no public policy basis to deny insurance coverage for the technical statutory violation that is the basis for the claims in the *Hartt* Action.

In sum, even if Pennsylvania law were different than Texas law, and were applicable here, Indian Harbor cannot meet the stringent requirements of Pennsylvania courts to avoid its express grant of coverage for punitive damages on public policy grounds because it cannot prove either that Flagship engaged in any willful or intentional violation of Texas Business and Commerce Code § 9.625, or that affording coverage for statutory damages and other amounts for which Flagship has agreed to settle the *Hartt* Action would result in a windfall for Flagship.

## V.   CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in the Flagship Motion, this Court should enter an Order granting the Flagship Motion and denying the Indian Harbor Motion.

Respectfully submitted,

/s/ *Denise Scofield*
Denise Scofield
Texas Bar No. 00784934
dscofield@morganlewis.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFF FLAGSHIP CREDIT
CORPORATION

Of Counsel:

MORGAN, LEWIS & BOCKIUS LLP

Patrick K.A. Elkins
Texas Bar No. 24045829
pelkins@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
713.890.5000
713.890.5001 (facsimile)

Richard F. McMenamin
Kathryn Potalivo
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

ATTORNEYS FOR PLAINTIFF
FLAGSHIP CREDIT CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document has been served on all counsel of record via electronic means as listed on the Court's ECF noticing system on this 4th day of January, 2011.


/s/ *Patrick K.A. Elkins*_____
Patrick K.A. Elkins