UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FLAGSHIP CREDIT CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-3616 |
| | § | |
| INDIAN HARBOR INSURANCE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is plaintiff Flagship Credit Corporation's ("Flagship") motion for summary judgment (Dkt. 9) and defendant Indian Harbor Insurance Company's ("Indian Harbor") cross-motion for summary judgment (Dkt. 11). Having considered the motions, related filings, and applicable law, the court is of the opinion that Flagship's motion should be DENIED and Indian Harbor's motion should be GRANTED.

**I. BACKGROUND**

This is an action in which Flagship and Indian Harbor each seeks a declaratory judgment relating to Indian Harbor's obligation, or lack thereof, to indemnify the Flagship for a settlement reached in a lawsuit filed by Glynn Hartt against Flagship on December 10, 2009, in the Court of Common Pleas for Philadelphia County, Pennsylvania. Dkt. 1. In the Hartt lawsuit, which is a consumer class action lawsuit, Hartt alleged that Flagship violated Chapter 9 of the Texas Business & Commerce Code. *Id.* Specifically, Hartt sought the minimum statutory damages available for an alleged violation of § 9.625(c) of the Texas Business and Commerce Code. *Id.* Flagship held a professional liability insurance policy issued by Indian Harbor, so it tendered the lawsuit to Indian Harbor for defense and indemnity. *Id.* Indian Harbor agreed to defend Flagship. *Id.* However, it

specifically reserved the right to deny coverage for any amount that did not constitute a "Loss" under the policy. *Id.*

Several months later, on September 20, 2010, Indian Harbor advised Flagship that the relief being sought by Hartt was not covered under the policy. *Id.* On October 1, 2010, Flagship informed Indian Harbor that its denial of its obligation to indemnify was a material breach of contract. *Id.* Flagship filed this lawsuit on the same day. *Id.* Flagship's complaint seeks a declaratory judgment decreeing that the damages sought in the Hartt lawsuit are within the definition of "Loss" in the policy and that Indian Harbor is obligated to indemnify Flagship against any liability Flagship may incur in the Hartt lawsuit. *Id.* Flagship also seeks damages for breach of contract. *Id.* Indian Harbor filed a counterclaim contemporaneously with its answer seeking a declaratory judgment decreeing that it has no duty to indemnify Flagship under the policy in connection with the Hartt lawsuit because the amounts sought in that action are "penalties" and thus not covered under the definition of "Loss." Dkt. 4.

On October 7, 2010, there was a private mediation in the Hartt lawsuit during which Flagship and Hartt reached a settlement agreement. Dkts. 9, 11. Indian Harbor's representatives attended the mediation. Dkts. 9, 11. The settlement agreement obligates Flagship to pay $2.5 million into a settlement fund, which will be used to pay attorneys' fees as well as minimum statutory damages to members of the settlement class.[1] Dkt. 9, Exh. J. On October 13, 2010, Flagship requested that Indian Harbor indemnify Flagship for the full amount of the settlement, which is within the policy limits. Dkt. 9 & Exh. K. On the same day, Indian Harbor responded to Flagship, asserting that the

---

[1] According to Indian Harbor, the Pennsylvania court has not yet approved the settlement. *See* Dkt. 11.

2

policy does not provide indemnity coverage for the relief sought in the Hartt lawsuit and that the settlement is therefore not covered under the policy. Dkt. 9, Exh. L.

The policy language that is at issue in this case is the contractual definition of "Loss." The policy defines "Loss" as follows:

> "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:
> (1) the multiplied portion of any damage award;
> (2) fines, penalties or taxes imposed by law; or
> (3) matters which are uninsurable under the law pursuant to which this Policy is construed.

Dkt. 11, Exh. A.

Flagship has moved for summary judgment in its favor, arguing that the settlement in the Hartt action is a covered "Loss" and that Indian Harbor is therefore obligated to indemnify Flagship for all amounts which Flagship is legally obligated to pay as a result of the Hartt settlement. Dkt. 9. Indian Harbor filed a cross motion for summary judgment, seeking summary judgment in its favor on Flagship's claims as well as summary judgment in its favor on its counterclaim for a declaratory judgment. Dkt.11. Indian Harbor argues that Hartt sought to recover only statutory damages for Flagship's alleged technical violations of the law, without reference to any actual damages suffered by the class members. *Id.* Indian Harbor claims that these statutory damages are "penalties" and therefore do not fall within the policy's definition of "Loss." *Id.* Indian Harbor also argues that Pennsylvania law applies, and even if the "penalties" were a "Loss," they are "punitive damages," and Pennsylvania public policy prohibits indemnification of punitive damages in most cases. *Id.*

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. CHOICE OF LAW

The parties agree that the court must apply either Texas or Pennsylvania law. *See* Dkts. 9, 11. However, Flagship argues that no choice-of-law analysis is necessary because Texas and Pennsylvania law do not conflict. Dkt. 9. Indian Harbor argues that there is precedent under Pennsylvania law regarding the interpretation of "insurability-of-penalties provisions in insurance policies," and that there are no Texas cases on point. Dkt. 11. Additionally, Indian Harbor claims that Pennsylvania public policy is less permissive on the insurability of punitive damages than Texas. *Id.* The court finds it unnecessary to determine whether Pennsylvania law or Texas law should

apply, as, under either Texas or Pennsylvania law, the damages sought in the Hartt action are not a covered "Loss."

## IV. ANALYSIS

This case turns on the interpretation of the term "Loss" in the policy. Specifically, under the plain language of the definition, "Loss" includes "settlements," and Flagship *settled* with Hartt. However, the definition also specifically excludes "fines, penalties or taxes imposed by law," and Indian Harbor contends that the settlement is for a "penalty imposed by law." So, the court must determine whether the damages sought in the Hartt lawsuit are "penalties imposed by law."

> Under Pennsylvania law, a court interpreting an insurance policy
>
> must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. However, if the policy provision is ambiguous, the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument.

*Riccio v. Am. Republic Ins. Co.*, 550 Pa. 254, 263-64, 705 A.2d 422, 426 (Pa. 1997). Similarly, under Texas law, "insurance contracts are subject to the same rules of construction as other contracts," and a court's "primary goal . . . is to give effect to the written expression of the parties' intent." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998). "Terms that are not defined in a policy are given their generally accepted or commonly understood meaning." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). If an exclusionary provision of an insurance policy "is subject to two or more reasonable interpretations, it is ambiguous," and Texas courts "'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable . . . .'" *Balandran*, 972 S.W.2d at 741 (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Flagship first argues that the damages sought in the Hartt lawsuit cannot be "penalties imposed by law" because "'penalty' is generally understood to be an amount imposed as punishment by, and payable to, a governmental body." Dkt. 9. Flagship cites the definition of "penalty" from ninth edition of *Black's Law Dictionary*, which defines "penalty" as follows:

> 1. Punishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as a punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss). • Though usu. for crimes, penalties are also sometimes imposed for civil wrongs.

*Black's* goes on to specifically define a "civil penalty," which is a "fine assessed for a violation of a statute or regulation" and a "statutory penalty," which is a "penalty imposed for a statutory violation; esp., a penalty imposing automatic liability on a wrongdoer for violation of a statute's terms without reference to any actual damages suffered." *Black's Law Dictionary* 1247 (9th ed. 2009).

This definition of "penalties" supports Indian Harbor's construction of the definition of "penalties" in the policy, not Flagship's. In the Hartt lawsuit, Hartt claimed that Flagship failed, in connection with repossessing vehicles, "both substantively and procedurally to provide plaintiff and the class with the reasonable authenticated notice of disposition of collateral required under" the Texas Business and Commerce Code.[2] Dkt. 1, Exh. B (Hartt's Amended Complaint). Hartt's Amended Complaint specifically notes that section 9.625 of the Texas Business and Commerce Code "provides for minimum damages for a secured party's failure to follow the law." Dkt. 1. Section 9.625(b) states that, subject to other subsections, "a person is liable for damages in the amount of any loss caused by a failure to comply with this chapter. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of,

---

[2] Under section 9.611, Flagship was required to provide "reasonable authenticated notification of disposition" of the collateral to the consumer. Tex. Bus. & Com. Code § 9.611.

7

alternative financing." Tex. Bus. & Com. Code Ann. § 9.625(b) (Vernon 2011). Section 9.625(c) provides a formula for calculating statutory damages based on the credit service charge. *See id.* § 9.625(c). Section 9.625(c) specifically notes that the debtor may recover "an amount not less" than the amount calculated under the formula. Thus, under the statute invoked by Hartt, a debtor may recover his or her actual damages, but if the actual damages are not more than the amount calculated under the formula in § 9.625(c), the debtor will, at a minimum, be entitled to recover the statutory amount for a proven violation.

The statute under which Hartt based her claim therefore encompasses both statutory damages that could be considered "penalties" under the *Black's* definition *and* damages for losses exceeding the minimum statutory damages. However, Hartt stated in briefing to the Pennsylvania court considering her claims that she was "seeking only statutory damages on behalf of himself [sic.] and the putative class." Dkt. 11, Exh. U. Moreover, her complaint specifically cites subsection 9.625(c) without reference to the subsections that relate to actual damages. Dkt. 1, Exh. B. The statutory minimum damages sought were not based on actual damages and therefore the statutory minimum damages fit *Black's* definition of "penalties." Thus, under the definition of "penalty" espoused by Flagship, "Loss" does not include the type of damages sought in the Hartt lawsuit.

Flagship also argues that the term "penalties" should be construed in concert with the surrounding language. Dkt. 9. Specifically, Flagship notes that the term "penalties" is listed between the terms "fines" and "taxes," both of which are defined by *Black's Law Dictionary* to refer to obligations to the government, not to aggrieved private parties. *Id.* Thus, Flagship argues that the term "penalties" should be construed to only include penalties payable to the government. *Id.* However, as Indian Harbor argues, the policy does not say "fines, penalties or taxes *payable to governmental bodies*," it says, "fines, penalties or taxes *imposed by law*." While the court agrees

8

that fines and taxes are often payable to governmental bodies, it is unwilling to place this restriction on the definition of "penalties" just because it is textually within the same series as "fines" and "taxes." Under the plain language of the definition, fines imposed by law, penalties imposed by law, and taxes imposed by law are all excluded from the definition of "Loss," whether the fines, penalties, or taxes are payable to governmental bodies or not.

Flagship attempts to buttress its argument that "penalties" only refers to penalties paid to governmental entities by claiming that "numerous other portions of the Business & Commerce Code expressly use the word 'penalty,' and they do so when referring to amounts that must be paid to the government." Dkt. 9 (citing Tex. Bus. & Com. Code Ann. §§ 17.22, 17.47(c) and (e), 17.92, 17.826, 17.854, 17.885, 17.904, and 20.11).[3] However, as Indian Harbor points out, the Texas Legislature has also used the word "penalty" to refer to amounts payable to non-governmental entities. Dkt. 11 (citing Tex. Bus. & Com. Code Ann. § 601.053 (merchants), Tex. Fin. Code Ann. § 302.102 (lender), and Tex. Gov't Code Ann. § 609.012 (vendor)). Thus, this argument does not support Flagship's argument.

Flagship also attempts to support its position that the court should not construe the relief requested by Hartt as a "penalty" by noting that "no reported Texas decision has used the term 'penalty' in reference to § 9.625(c) since the official explanation of the remedy was added in the Official Commentary to § 9.625(c), which became effective on July 1, 2001." Dkt. 9. The "Official Commentary" refers to subsection (c) as providing a "remedy" or "statutory damages." § 9.625, cmts. 3, 4. While the court finds it somewhat relevant that the term "penalty" has not been used in reference to the newest enactment of this provision, the term *has* been used by the Texas Supreme

---

[3] The cited sections from Chapter 17 are from the Texas Deceptive Trade Practices Act. The cited section from Chapter 20 provides injunctive relief and a civil penalty for violations of regulations relating to consumer credit reporting agencies.

Court in reference to the old version. *See First City Bank-Farmers Branch v. Guex*, 677 S.W.2d 25 (Tex. 1984). The former version of subsection 9.625(c) stated, "'If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.'" *Guex*, 677 S.W.2d at 29 (quoting the former Tex. Bus. & Com. Code § 9.507(a)). While this language is slightly different than the current subsection 9.625(c), both provisions clearly provide a remedy to the debtor based on a formula rather than actual damages. Thus, the Texas Supreme Court's impression of the remedy provided in the former version is predictive of how it would view the current version.

In *Guex*, the Texas Supreme Court referred to the remedy offered by the former version of section 9.625(c) as a "statutory penalty," "minimal damage," and "minimal statutory damages." *Guex*, 677 S.W.2d at 27, 29, 30. Flagship argues that the court's use of these different phrases to describe the remedy supports its argument that the remedy requested by Hartt as "damages" rather than a "penalty." *See* Guex, 677 S.W.2d at 29; Dkt. 9. This reasoning is apparently based on the fact that the court referred to the remedy as "damages" as well as a "penalty" rather than just as a penalty. Indian Harbor, however, does not dispute that Hartt sought "damages." It simply argues that the type of damages Hartt sought are in the nature of a statutory penalty rather than actual damages. The Texas Supreme Court's use of the term "penalty" in connection with the former version of the subsection, not withstanding the fact that it also used the term "damages," supports Indian Harbor's position that the minimum statutory damages Hartt sought *are* a "penalty" under the plain meaning of the word.

Flagship also argues that even if the damages sought by Hartt could be construed as a "penalty," its argument that they are not a "penalty" is not *unreasonable*, and if there are two

10

reasonable explanations, an ambiguity exists. Under Texas law, if a contract is subject to two or more reasonable interpretations after applying the rules of construction, it is ambiguous. *Balandran*, 972 S.W.2d at 741. However, "[j]ust because the parties disagree about the proper construction of a contract does not mean that the contract is ambiguous. Conflicting interpretations . . . , and even unclear and uncertain language, do not necessarily mean a contract is ambiguous. Courts should not strain to find an ambiguity in a contract if, in doing so, they defeat the probable intentions of the parties." *Appleton v. Appleton*, 76 S.W.3d 78, 85 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (citations omitted). Under Pennsylvania law, a "contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Ins. Adjustment Bureau v. Allstate*, 588 Pa. 470, 481, 905 A.2d 462, 468-69 (2006). However, courts will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999).

Here, Flagship's proposed construction is not reasonable. Flagship argues first that the damages sought in the Hartt lawsuit are not a "penalty" under the plain meaning of the word, pointing to the definition in *Black's Law Dictionary*. As noted above, the *Black's* definition actually supports the opposite contention—that the damages sought *are* a penalty. Thus, this argument is not reasonable. Flagship's second argument—that the term only applies to damages payable to a governmental body—improperly inserts language into the definition of "Loss." The policy does *not* limit the "fines, penalties or taxes imposed by law" to only those payable to governmental bodies, and seeking to add that restriction merely because "penalties" is in a series with two other words that are usually used to refer to monies paid to governmental agencies is not reasonable. Thus, Flagship

11

provides no reasonable basis for its position that the term "penalties" in the definition of "Loss" does not encompass the remedy requested in the Hartt lawsuit.

The policy's definition of "Loss" is not ambiguous. The "Loss" covered by the policy does not include penalties, and the remedy sought by Hartt for which Flagship seeks indemnification is a "penalty" under the very definition of "penalty" to which Flagship directs the court. Thus, the "Loss" is not covered by the policy, and Indian Harbor is not required to indemnify Flagship for the amount it owes under the Hartt settlement. Indian Harbor's motion for summary judgment seeking dismissal of Flagship's request for a declaratory judgment stating that the damages sought in the Hartt lawsuit are within the definition of "Loss" is GRANTED, and Flagship's motion for summary judgment seeking dismissal of Indian Harbor's counterclaim for a declaratory judgment stating that Indian Harbor has no duty to indemnify Flagship for the Hartt lawsuit is DENIED. Likewise, Indian Harbor's motion for summary judgment on its affirmative claim for relief is GRANTED, and Flagship's motion for summary judgment on its affirmative claim for relief is DENIED. Flagship's claim for a declaratory judgment is DISMISSED WITH PREJUDICE. Indian Harbor has no duty to indemnify Flagship for the Hartt lawsuit.

Flagship also asserts a claim for breach of contract. However, the breach of contract claim is contingent on Flagship's allegation that Indian Harbor improperly denied coverage. *See* Dkt. 1. Because the denial was not improper, Indian Harbor's motion for summary judgment as to that claim is GRANTED, and Flagship's breach of contract claim is DISMISSED WITH PREJUDICE.

## V. CONCLUSION

Flagship's motion for summary judgment is DENIED. Indian Harbor's motion for summary judgment is GRANTED. Flagship's claims are hereby DISMISSED WITH PREJUDICE.

It is so ORDERED.

Signed at Houston, Texas on April 29, 2011.

Gray H. Miller
United States District Judge