# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT



United States Court of Appeals
Fifth Circuit

# F I L E D

June 15, 2012

No. 11-20408

Lyle W. Cayce
Clerk

FLAGSHIP CREDIT CORPORATION,

Plaintiff-Appellant

v.

INDIAN HARBOR INSURANCE COMPANY,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-3616

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.
PER CURIAM:[*]

A finance company that was sued in a class action sought a declaratory judgment that it was entitled to indemnity under an insurance policy. The district court granted summary judgment to the insurance company and dismissed the finance company's breach of contract claim. We REVERSE and REMAND for further proceedings consistent with this opinion.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20408

FACTS

In December of 2009, Glynn Hartt initiated a class action lawsuit in Pennsylvania alleging that Flagship Credit Corporation, which provides automobile financing in Texas, had failed to provide class members with adequate notice of default as required by the Texas Business and Commerce Code. The class included over 900 borrowers. Statutory minimum damages under the code were sought. The pertinent code provision states:

> [I]f the collateral is consumer goods, a person that was a debtor or secondary obligor at the time the secured party failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price.

Tex. Bus. & Com. Code § 9.625(c)(2). In January 2010, Flagship requested Indian Harbor Insurance Company provide a defense and indemnify it in the class action suit. Indian Harbor agreed, reserving the right to deny coverage for any amount that did not constitute "loss" under the policy, including any amount "in the nature of . . . penalties." The policy defined "loss" as:

> damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and Defense Expenses in excess of the Retention that [Flagship] is legally obligated to pay. Loss will not include:
> (1) the multiplied portion of any damage award;
> (2) fines, penalties or taxes imposed by law; or
> (3) matters which are uninsurable under the law pursuant to which this Policy is construed.

The policy did not define "damages," "settlements," or "penalties."

After Flagship and Hartt reached a settlement agreement, Indian Harbor refused to indemnify Flagship. It asserted that the policy did not cover the settlement because it was a penalty.

Flagship sued for breach of contract and sought a declaratory judgment in

2

No. 11-20408

the United States District Court for the Southern District of Texas. Jurisdiction exists because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Flagship argued that the statutory minimum damages paid in settling the *Hartt* suit were covered losses. Indian Harbor counterclaimed for a declaratory judgment that the *Hartt* suit's statutory minimum damages were a penalty that fell outside the policy's scope. Both sides moved for summary judgment. Concluding that these damages are "penalties" under the policy, the district court granted Indian Harbor's motion for summary judgment and dismissed Flagship's breach of contract claim. Flagship now appeals from those rulings.

## DISCUSSION

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A district court's interpretation of an insurance contract or provision is a question of law that we review *de novo*." *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011). "This broad standard of review includes the initial determination of whether the contract is ambiguous." *Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 242 (5th Cir. 2011) (quotation marks and citation omitted).

The dispute in this case is whether the statutory minimum damages provided by Section 9.625(c)(2) are "penalties . . . imposed by law" under Flagship's policy. Neither party argues that in analyzing the exclusion from coverage of "fines, penalties or taxes imposed by law," we should limit the "imposed by law" phrase to modifying the immediately preceding word in the list, *i.e.*, "taxes." Such a limitation would be implausible, as "taxes" are by definition imposed by some governmental body. The damages here were

3

No. 11-20408

imposed by law inasmuch as they were computed using a statutory minimum set by the Texas legislature. All three categories in the exclusion are limited to payments imposed by law. Our issue is whether these particular impositions of law were penalties as meant by the contract. They were not taxes or fines. What ultimately will prove dispositive is whether all three categories signify payments mandated by law that are to be paid to the government.

A federal court sitting in diversity applies the substantive law of the forum state, which in this case is Texas. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). In Texas, courts only undertake a choice-of-law analysis if there is a conflict of law that actually affects the outcome of an issue. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984). The party asserting a conflict with Texas substantive law must demonstrate the existence of a true conflict. *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Absent such a demonstration, Texas law applies. *Id.* The district court determined there were no meaningful differences in the law of the two states relevant to the issues here.

In the district court, Indian Harbor argued Pennsylvania law must be applied to interpreting this contract. On appeal, that contention barely resurfaces. Instead, Indian Harbor cites Pennsylvania caselaw on various points but only once states that it contends Pennsylvania law applies. It never argues how that state's law differs from Texas law. Consequently, it never mounts a challenge to the district court's conclusion that the relevant law of the two states is the same. Pennsylvania law perhaps would apply under choice-of-law analysis, but the district court did not and should not have engaged in such analysis until first finding a true conflict. Indian Harbor has waived any argument that there is a true conflict, and we apply Texas law. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004).

4

No. 11-20408

We start with a review of Texas law concerning the meaning of the term "penalties." Because it is undefined in the contract, "we presume that the parties intended its plain, generally accepted meaning." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Dictionaries are often helpful to find the generally accepted meaning. *Id.* One such definition is this:

> **penalty**. (15c) 1. Punishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as a punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss). Though usu. for crimes, penalties are also sometimes imposed for civil wrongs.

*Black's Law Dictionary* 1247 (9th ed. 2009). This definition supports that "[c]entral to the definition of penalty is the 'idea of punishment.'" *In re Hickman*, 260 F.3d 400, 403 (5th Cir. 2001) (citation omitted); *see also Matter of Wood*, 643 F.2d 188, 190-91 (5th Cir. 1980).

When a term can have multiple meanings, context often is determinative. *Johnson v. United States*, 130 S. Ct. 1265, 1270 (2010); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750-51 (Tex. 2006). Here, "penalties" is the second item of three, placed between "fines" and "taxes." Flagship contends that the placement of "penalties" supports that the entire clause concerns payments made to the government. It argues that the canon of construction known as *noscitur a sociis* supports its interpretation. That canon gives the meaning to one word in a group that will be consistent with the meaning of its companion words. *United States v. Jasso*, 587 F.3d 706, 711 (5th Cir. 2009).

Texas courts apply canons of construction prior to deciding whether a term is ambiguous: "[i]f the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous . . . ." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (quotation marks and citation omitted). Indian

No. 11-20408

Harbor objects to the use of *noscitur a sociis* here, even if state law generally permits its application prior to a determination of ambiguity. Accepting that the word "taxes" is without ambiguity, Indian Harbor asserts that "fines" is ambiguous and cannot provide the necessary pattern of common meaning to apply *noscitur a sociis*. So we examine the meaning of "fines."

A "fine" is "[a] pecuniary criminal punishment or civil penalty payable to the public treasury." *Black's Law Dictionary* 708 (9th ed. 2009). Indian Harbor provides citations to a few cases in which "fine" has included some form of payment to an individual. A careful word search in caselaw can uncover such examples, but the discovery of the occasional use of "fines" in an unusual manner does not alter that the "plain, generally accepted meaning" of a "fine" is a payment received by a government. "Taxes" also are governmental receipts. As we have noted, "penalties" usually but not exclusively means punishments for criminal matters. *See Black's Law Dictionary* 1247 (9th ed. 2009). The common meaning, though not the exclusive meaning, of all three terms involves a payment to the government.

Indian Harbor argues that the interpretation is not reasonable because it has the effect of adding words to the contract. There is a difference, however, between using the canons of construction to determine the meaning of a term and rewriting the terms of a contract. *Cf. United States v. Monsanto*, 491 U.S. 600, 611 (1989). A court's decision to use an applicable canon of construction to uncover the meaning of a term is not an instance of impermissible judicial redrafting. Rather, the canon is used to show the implicit meaning of the term the parties chose. Indian Harbor's position would require us to reject the manner in which Texas courts use the canons of construction. *See Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333. That is something we will not do.

We now consider why the district court came to a different conclusion. The court examined the same *Black's* definition of "penalties." After reciting the

6

definition, which refers to "civil wrongs," the court focused on the phrase "civil penalty" and considered it to be synonymous. The definition of "civil penalty" includes as one meaning a "statutory penalty." *Black's Law Dictionary* 1247 (9th ed. 2009). A statutory penalty is exactly what these damages were. Having found through this progression of definitions that "penalties" definitely could include statutory penalties, the district court was unconvinced that *noscitur a sociis* actually led to a better understanding of meaning. Instead, it determined Flagship's argument would be a rewriting of the contract to add something like "fines, penalties, or taxes payable to governmental bodies." The court agreed that fines and taxes were often paid to the government, but the court would not add that understanding to penalties.

The district court's analysis is not unreasonable. Where we disagree, though, is that by rejecting the canon of construction, the court allowed all the possible meanings of "penalties" to apply. *Noscitur a sociis* is a traditional means of limiting statutory or contract words from being given every conceivable meaning. Instead, when a list of words contains some whose generally accepted meanings have a commonality, then those associate words should limit a single word that has more varied meanings. The canon is the equivalent, likely not invariably correct but a serviceable approach, of asking drafters which of the varied meanings of the doubtful word they intended.

Aided by the canon of construction, we conclude that the term "penalties" within the phrase, "fines, penalties or taxes" is limited to payments made to the government. Accordingly, the statutory-minimum-damages portion of the *Hartt* settlement is not a "penalty."

There are two other issues we must also address in this appeal. First, Flagship argues that the attorneys' fees are not "penalties" and therefore must be paid by Indian Harbor. While Flagship made a passing reference to this argument before the district court, this is the first time Flagship has pressed the

No. 11-20408

issue.  Flagship's comments to the district court were not enough to afford the court an opportunity to rule on the issue.  Therefore, this argument is not properly before us on appeal.  *See Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008).

Second, Indian Harbor asserts that Flagship has abandoned its breach of contract claim by not presenting it to the district court.  Our review of the record shows that Flagship adequately identified its claim.  Moreover, the district court dismissed the claim; so it clearly had the opportunity to rule on it.

We REVERSE the grant of summary judgment for Indian Harbor, VACATE the dismissal of Flagship's breach of contract claim, and REMAND for further proceedings consistent with this opinion.